**Jon EWING, Plaintiff,**

**v.**

**FEDERAL HOME LOAN BANK OF DES MOINES; Richard Swanson; Nicholas Spaeth; and Michael Guttau, Defendants.**

**No. 4:09–cv–106.**

United States District Court,
S.D. Iowa,
Central Division.

Aug. 4, 2009.

12. Defendant Adam Swiech's motion to dismiss is denied as moot in light of the present ruling.

Roxanne Barton Conlin, Roxanne Conlin & Associates, Des Moines, IA, for Plaintiff.

Debra Lynne Hulett, Frank B. Harty, Nyemaster Goode West Hansell & O'Brien PC, Des Moines, IA, for Defendants.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court are two motions filed by Federal Home Loan Bank of Des Moines ("FHLB"), Richard Swanson ("Swanson"), Nicholas Spaeth ("Spaeth"), and Michael Guttau ("Guttau") (collectively "Defendants"): Defendants' Motion to Strike Plaintiff's Prayer for Punitive Damages (Clerk's No. 10) and Defendants' Motion to Dismiss (Clerk's No. 11), both filed on April 17, 2009. After receiving an extension of time to respond, Jon Ewing ("Plaintiff") filed a Resistance to Defendants' Motion to Dismiss on May 29, 2009 (Clerk's No. 17). Defendants filed a Reply (Clerk's No. 22) on June 22, 2009 .[1] Clerk's No. 22. Plaintiff filed a Supplement to his Resistance on July 9, 2009 (Clerk's No. 23) and Defendants filed a Response to Plaintiff's Supplement on July 10, 2009 (Clerk's No. 24). Plaintiff did not file a resistance to Defendants' Motion to Strike Plaintiff's Prayer for Punitive Damages.[2] The matters are fully submitted.

---

1. Defendants received an extension of time to file their Reply on June 4, 2009. Clerk's No. 19.

2. On the docket, Plaintiff filed its Resistance to Defendants' Motion to Dismiss as a Response to both the Motion to Dismiss and the Motion to Strike. *See* Clerk's No. 17. The document itself, however, is not responsive to the Motion to Strike. Local Rule 7(f) provides: "If no timely resistance to a motion is filed, the motion may be granted without prior notice."

## I. BACKGROUND

Plaintiff filed this action in the Iowa District Court for Polk County on January 6, 2009. Clerk's No. 1.4. According to the Complaint, Plaintiff is a 52 year-old African–American who commenced work as a Project Manager for FHLB on February 15, 2007. *Id.* ¶¶ 2, 9. On November 13, 2007, Plaintiff was informed by Spaeth, the Executive Vice President, General Counsel, and Chief Risk Officer at FHLB, that the Project Manager position was being eliminated. *Id.* ¶¶ 5, 12. Plaintiff was ultimately terminated on December 28, 2007. *Id.* ¶ 9. Plaintiff contends that his termination was, in fact, due to discrimination against him on the basis of his race and age. *Id.* ¶ 20. Plaintiff seeks damages for age and race discrimination under the Iowa Civil Rights Act ("ICRA"), Iowa Code § 216.6, and under Iowa Code § 729.4.[3] *Id.* ¶¶ 21, 26.

On March 11, 2009, Defendants Swanson and Spaeth removed the action to the United States District Court for the Southern District of Iowa (Clerk's No. 1), contending that jurisdiction was proper under 28 U.S.C. § 1442(a), which provides for federal jurisdiction over actions involving the "United States or any agency thereof or any officer ... of the United States or of any agency thereof." On March 12, 2009, the Court entered a Pre–Screening Order wherein it expressed concern that Defendants' allegation that FHLB is a "federal instrumentality" was insufficient to invoke the Court's jurisdiction under § 1442(a), which authorizes jurisdiction over cases involving "agenc[ies]" of the United States. Clerk's No. 2. The Court ordered Defendants to file a brief addressing its concerns in this regard no later than March 25, 2009. *Id.*

Rather than addressing the Court's § 1442(a) concerns, Spaeth filed an Amended Notice of Removal on March 23, 2009.[4] Clerk's No. 6. The Amended Notice of Removal asserted an alternative basis for removal, namely that FHLB is subject to the "sue and be sued" clause of the statute enacting its federal corporate charter, and that removal was, therefore, proper under 28 U.S.C. § 1441(b). *Id.* Plaintiff conceded in an e-mail dated April 7, 2009 that "the ground stated in the amendment is in fact a proper ground for federal jurisdiction," and the Court, after reviewing the relevant case law, likewise became satisfied that it possessed jurisdiction over the present matter. *See* Clerk's No. 9. Shortly thereafter, Defendants filed the present motions.

## II. MOTION TO STRIKE

Defendants' Motion to Strike urges that Plaintiff's request for punitive damages under the ICRA is improper and must, therefore, be stricken. As noted *supra*, Plaintiff has not explicitly resisted Defendants' Motion to Strike. Regardless, Iowa law is quite clear that punitive damages are not a remedy available to civil rights complainants. *See Chauffeurs, Teamsters & Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394

---

**3.** Iowa Code § 729.4 is a criminal statute, providing that any "employer ... convicted of a violation of subsection 1 [discriminating in the employment of individuals because of race, religion, color, sex, national origin, or ancestry] ... shall be guilty of a simple misdemeanor."

**4.** Despite the fact that Spaeth's Amended Notice of Removal adequately stated an independent basis for jurisdiction, both parties devote substantial space in their briefs on the present Motion to Dismiss arguing the question of whether FHLB is an "agency" or an "instrumentality" of the United States. The Court finds that the distinction was only relevant to the now-moot jurisdictional question under 28 U.S.C. § 1442(a) and is not germane to the question presented by the Motion to Dismiss.

N.W.2d 375, 384 (Iowa 1986); *see also Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 851 ("Because the ICRA does not permit punitive damages, the district court awarded no such damages."). Accordingly, Defendants' Motion to Strike is GRANTED.

### III. MOTION TO DISMISS

■ Defendants' Motion to Dismiss, made pursuant to Federal Rule of Civil Procedure 12(b)(6), initially asserted three arguments in favor of dismissing Plaintiff's claims: 1) Plaintiff's state law claims against the Defendants must be dismissed because they conflict with federal law; 2) Plaintiff's claim under Iowa Code § 729.4 is preempted by the ICRA; and 3) Plaintiff's claim under Iowa Code § 729.4 is untimely. Plaintiff concedes Defendants' second argument, that his claim under § 729.4 is preempted by the ICRA. *See Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 638 (Iowa 1990) (finding that the ICRA provides the exclusive remedies for discrimination and that a plaintiff's cause of action under § 729.4 "is preempted by that chapter"). Defendants have withdrawn the third argument of untimeliness, as Plaintiff's action was clearly filed within the applicable statute of limitation. *See* Clerk's No. 22 ("Defendants hereby withdraw the argument that Ewing's claim under Iowa Code § 729.4 should be dismissed as untimely"). Accordingly, the only question remaining before the Court is whether Plaintiff's ICRA claim is preempted in whole or in part by federal law.

### A. *Standard of Review*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), provides the applicable standard of review for a motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6): A viable complaint must include "enough facts to

state a claim to relief that is plausible on its face." 550 U.S. at 569, 127 S.Ct. 1955. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 555, 127 S.Ct. 1955. This standard is not a "heightened fact pleading" requirement, but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 547, 556, 127 S.Ct. 1955. Though ordinarily, a Rule 12(b)(6) motion will not be granted on the basis of an affirmative defense, such relief may be warranted where "the complaint itself establishes the defense." *Jessie v. Potter*, 516 F.3d 709, 713 n. 2 (8th Cir. 2008).

Under *Twombly*, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See id.* at 1964–65; *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir.1997). Moreover, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true, even if doubtful. *See Twombly*, 127 S.Ct. at 1965; *see also Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Thus, a well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." *Twombly*, 127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

### B. *Law and Analysis*

■ It is well settled that "state law that conflicts with federal law is 'without effect'" under the doctrine of preemption. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The doctrine is founded in the

Supremacy Clause of the United States Constitution, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.

■ There are three general categories of preemption: 1) express preemption, where "Congress define[s] explicitly the extent to which its enactments preempt state law"; 2) field preemption, where Congress's regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" or where an Act of Congress "touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject"; and 3) conflict preemption, where state and federal law directly conflict, making it "impossible for a private party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citations omitted); *see also CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) ("Where a state statute conflicts with, or frustrates, federal law, the former must give way."); *Nordgren v. Burlington N. R.R. Co.,* 101 F.3d 1246, 1248 (8th Cir.1996).

In the present matter, Defendants contend that conflict preemption operates to bar Plaintiff's ICRA claim because the ICRA's prohibition of "unfair employment practices" directly conflicts with FHLB's enabling statute, which provides:

Upon the making and filing of such organization certificate with the Director, such bank shall become, as of the date of the execution of its organization certificate, a body corporate, and as such and in its name as designated by the Director it shall have power to adopt, alter, and use a corporate seal; to make contracts; to purchase or lease and hold or dispose of such real estate as may be necessary or convenient for the transaction of its business; to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal; to select, employ, and fix the compensation of such officers, employees, attorneys, and agents as shall be necessary for the transaction of its business,; to define their duties, require bonds of them and fix the penalties thereof, and *to dismiss at pleasure such officers, employees, attorneys, and agents* ....

12 U.S.C. § 1432(a) (emphasis added). Plaintiff resists Defendants' argument and argues that the ICRA is not preempted by federal law.[5]

The question of whether the "dismiss at pleasure" provision of the Federal Home Loan Bank Act ("FHLBA") preempts state anti-discrimination laws is one of first impression in this circuit. Other courts considering the "dismiss at pleasure" language of § 1432(a) or identical language in the National Bank Act ("NBA")[6] and the

---

**5.** Plaintiff makes the argument that his ICRA claim is not preempted because Plaintiff was not an officer of the FHLB. Plaintiff appears to have mistaken the language of the National Banking Act, which provides that a national bank has the power to "dismiss such officers or any of them at pleasure," with the provisions of the Federal Home Loan Bank Act, which clearly provides that FHLBs have the authority to "dismiss at pleasure ... employ-

ees," amongst others. *Compare* 12 U.S.C. § 1432(a) *with* 12 U.S.C. § 1432(a).

**6.** The National Banking Act provides that a national bank has the power "[t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at*

Federal Reserve Act ("FRA"),[7] however, have considered the issue and reached varying conclusions.

### 1. Decisions finding complete preemption.

Defendants urge the Court to adopt the position of those courts that have concluded that the "dismiss at pleasure" language operates to wholly preempt state employment laws. For example, in *Ana Leon T. v. Federal Reserve Bank of Chicago*, the plaintiff filed claims under Title VII and Michigan's Elliott–Larson Act[8] claiming that the Federal Reserve Bank of Chicago was liable for discrimination. 823 F.2d 928, 930 (6th Cir.1987). In finding the plaintiff's claim under Michigan state law preempted, the Sixth Circuit summarily stated that "inasmuch as Leon was an employee of a Federal Reserve Bank, her rights under the Elliott–Larsen Act were preempted by federal law. [The FRA] specifically provides that employees of a Federal Reserve Bank may be dismissed 'at pleasure.' This provision preempts any state-created employment right to the contrary." *Id.* at 931. Relying on *Ana Leon T.*, the Sixth Circuit reached the same conclusion in *Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392 (6th Cir. 2004). In *Arrow*, the plaintiff asserted

state law claims that the Federal Reserve Bank of St. Louis had engaged in gender and disability discrimination. *Id.* at 393. Relying on *Leon*, the Sixth Circuit concluded that "inasmuch as Arrow was an employee of a Federal Reserve Bank, her rights under Kentucky state law were preempted by federal law."[9] *Id.; see also Kispert v. Fed. Home Loan Bank of Cincinnati*, 778 F.Supp. 950, 953 (S.D.Ohio 1991) (relying on *Ana Leon T.* in concluding that a plaintiff's state law age discrimination claim was preempted by § 1432(a)).

In *Andrews v. Federal Home Loan Bank of Atlanta*, the Fourth Circuit considered the "dismiss at pleasure" language of § 1432(a) in the context of a plaintiff's claims that he was discharged for criticizing a change in the bank's asset-classification policy. 998 F.2d 214, 216 (4th Cir. 1993). The plaintiff raised a state law claim for wrongful termination, which the district court found to be preempted by the "dismiss at pleasure" language of the FHLBA. *Id.* at 220. The Fourth Circuit affirmed the district court's determination, stating, "Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees. Any state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress." *Id.*[10]

---

pleasure, and appoint others to fill their places." 12 U.S.C. § 24 (Fifth) (emphasis added).

**7.** The Federal Reserve Act grants authority to Federal Reserve Banks to "dismiss at pleasure ... officers or employees." 12 U.S.C. § 341

**8.** Michigan's Elliot–Larson Act provides that employers are prohibited from discriminating against persons with respect to employment on account of race, color, national origin, religion, age, sex, weight, height, or marital status. Mich. Comp. Laws Ann. § 37.2202(1)(a).

**9.** The *Arrow* court additionally noted that its decision in this regard was supported by its

1983 decision in *Wiskotoni v. Michigan Nat'l Bank–West*, wherein it found that a plaintiff's claims for wrongful termination were preempted by the NBA, stating: " '[The NBA] has consistently been construed by both federal and state courts as preempting state law governing employment relations between a national bank and its officers and depriving a national bank of the power to employ its officers other than at pleasure.' " *Arrow*, 358 F.3d at 393 (quoting *Wiskotoni*, 716 F.2d 378, 387 (6th Cir.1983)).

**10.** *Andrews* notably dealt with a wrongful termination claim asserted under state law, not with a claim of discrimination under state law. Numerous courts considering employment rights (other than anti-discrimination

### 2. Decisions finding no preemption.

Plaintiff encourages the Court to adopt the reasoning of those courts holding that complete preemption of state law is not required by federal banking acts containing a "dismiss at pleasure" provision. For instance, in *Katsiavelos v. Federal Reserve Bank of Chicago*, the Northern District of Illinois distinguished the decisions of *Ana Leon T.* and *Andrews*, finding that such courts only determined that the "dismiss at pleasure" language preempts state laws providing employees with contractual employment rights, not that they preempt state antidiscrimination statutes. *See Katsiavelos v. Fed. Reserve Bank of Chicago*, No. 93C7724, 1995 WL 103308 (N.D.Ill. Mar.3, 1995) (discussing *Ana Leon T.*, 823 F.2d at 928; *Andrews*, 998 F.2d at 214). Indeed, the *Katsiavelos* court specifically rejected the conclusion of *Ana Leon T.* on the basis that the court there "provided no reasons or policy for its holding that all state employment rights were pre-empted by the dismiss at pleasure language." *Id.* at *2. Rather, *Katsiavelos* adopted the position that "dismiss at pleasure is analogous to dismiss at will, implying the absence of a contractual relationship between employer and employee. The right to be free from discrimination is not a contractual right, and therefore is not necessarily embodied in the dismiss at pleasure lan-

guage." [11] *Id.; see also Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 255 (3d Cir.2004) ("We hold that the [FRA] precludes enforcement against a federal reserve bank of an employment contract that would compromise its statutory power to dismiss at pleasure, and prevents the development of a reasonable expectation of continued employment.").

The Southern District of New York reached a similar conclusion in *Moodie v. Federal Reserve Bank of New York*, determining that the plain language of the Federal Reserve Act does not support the proposition that Federal Reserve Banks were intended to be exempted from antidiscrimination statutes or regulations of the states in which they operate, "particularly when the state statutory scheme is consistent with federal legislation." 831 F.Supp. 333, 337 (S.D.N.Y.1993).

The most substantively detailed decision cited by Plaintiff is *Kroske v. U.S. Bank Corp.*, wherein the plaintiff asserted an age discrimination claim under the Washington Law Against Discrimination ("WLAD") against a bank that was subject to the National Banking Act. 432 F.3d 976, 978–79 (9th Cir.2006). The district court found the plaintiff's claim preempted by the NBA's "dismiss ... at pleasure" provision, but the Ninth Circuit Court of Appeals reversed. *Id.* at 980. After first

---

rights) arising under state law have concluded that such claims are preempted by federal "dismiss at pleasure" statutes. *See, e.g., Schweikert v. Bank of Am., N.A.*, 521 F.3d 285, 288 (4th Cir.2008) (stating that the "dismiss at pleasure" provision of the NBA and the FHLBA preempts state law claims for wrongful discharge); *Inglis v. Feinerman*, 701 F.2d 97, 99 (9th Cir.1983) (holding that "attempts to create employment rights from independent sources such as the employment manual are void under the Federal Home Loan Bank Act").

**11.** The conclusion in *Katsiavelos* that "dismiss at pleasure" is analogous to dismiss at

will is the premise of a Note appearing in the Harvard Civil Rights–Civil Liberties Law Review. *See* Miriam Jacks Achtenberg, *Rereading the National Bank Act's "At Pleasure" Provision: Preserving the Civil Rights of Thousands of Bank Employees*, 43 Harv. C.R.-C.L. L.Rev. 165 (Winter 2008). Therein, the author makes a strong argument that the NBA does not conflict with either federal or state anti-discrimination laws and that the " 'at pleasure' provision only restricts a bank's right to contract away its ability to discharge and does not eliminate a bank's duty to comply with state or federal restrictions on discharge." *Id.* at 182.

concluding that the district court erred in finding field preemption,[12] the *Kroske* court went on to evaluate whether the WLAD conflicted with the NBA's "dismiss ... at pleasure" provision such that the WLAD should be preempted. *Id.* at 983. The court provided an extensive history of the congressional intent in using the "at pleasure" language in federal banking acts [13] and reiterated its own prior rulings that the "dismiss at pleasure" provisions bar state law contract and tort law claims in the field of employment. *Id.* at 984–85.

In a detailed analysis, the Ninth Circuit explicitly rejected the Sixth Circuit's "summary conclusion" in *Ana Leon T.* that "state anti-discrimination statutes enacted under a state's police powers are preempted by the banking laws simply because they are part of a general category of 'state created employment rights.'" *Id.* at 985. Rather, because the WLAD was "modeled after and incorporated into the federal anti-discrimination laws ... federal preemption of the WLAD must be considered in light of Congress's enactment of relevant federal employment discrimination laws and the cooperative state-federal anti-discrimination scheme." *Id.*

Federal anti-discrimination statutes are relevant to our inquiry because federally chartered banks are not exempt from liability under these laws. *See Cooper v. Fed. Reserve Bank,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). Indeed, courts that have addressed the issue consistently have held that banks are subject to liability for discrimination under federal anti-discrimination laws irrespective of the bank's right to dismiss an officer (or employee) "at pleasure."

*Id.* at 986 (some citations omitted). Because the plaintiff had stated an age discrimination claim, the *Kroske* court undertook a careful analysis of the ADEA, finding that the ADEA shares the common purpose with Title VII " 'to eradicate discrimination in the workplace, [and to] reflect a societal condemnation of invidious bias in employment decisions.'" *Id.* at 986 (quoting *McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)). The court then found that the ADEA's prohibitions on discriminatory conduct were in direct and irreconcilable conflict with the banks' authority to "dismiss at pleasure" its employees and officers. *Id.* at 987 ("[W]e conclude that the two provisions are in irreconcilable conflict with regard to the banks' power to dismiss an officer on the basis of age. There is no ambiguity as to the nature of the remedial scheme Congress enacted in the ADEA,

---

12. "[T]he district court erred in determining that the dismiss-at-pleasure provision of the [NBA] preempts the entire filed of law governing national banks' employment practices." *Kroske,* 432 F.3d at 982. "Indeed, the at-pleasure provision is not accompanied by a pervasive regulatory scheme that governs the dismissal of bank officers, the mere volume and complexity of which demonstrates an implicit congressional intent to displace all state law." *Id.* (internal citations and quotations omitted).

13. Noting that the "dismiss at pleasure" provisions of the FHLBA, the FRA, and the NBA are interpreted consistently by courts, the *Kroske* court stated that " 'the original con-gressional intent behind the at-pleasure provision of the Bank Acts was to ensure the financial stability of the banking institutions by affording them the means to discharge employees who were felt to compromise an institution's integrity.'" *Id.* at 984 (quoting Sharon A. Kahn & Brian McCarthy, *At–Will Employment in the Banking Industry: Ripe for a Change,* 17 Hofstra Lab. & Emp. L.J. 195, 215 (1999)). The *Kroske* court also quoted extensively from the Eighth Circuit's 1896 decision in *Westervelt v. Mohrenstecher,* wherein it addressed the purpose of the "at pleasure" provision of the National Bank Act. *See id.* (citing *Westervelt,* 76 F. 118, 122 (8th Cir.1896)).

and that scheme simply cannot work if [the NBA] is allowed to operate concurrently." (internal citations and quotations omitted)). Accordingly, the court concluded that "the dismiss-at-pleasure provision of [the NBA] is repealed by implication only to the extent necessary to give effect to the ADEA," i.e., "the authority to dismiss officers 'at pleasure' does not encompass the right to terminate an officer in a manner that violates the prohibitions against discrimination enumerated in the ADEA."[14] *Id.; see also Peatros v. Bank of Am.*, 22 Cal.4th 147, 91 Cal. Rptr.2d 659, 990 P.2d 539 (2000) (finding that there was no way to harmonize Title VII, the ADEA, and the California Fair Housing and Employment Act and concluding that the NBA had been "impliedly amended" by the two statutes).

Relying on its conclusion that the ADEA partially repealed by implication the "at pleasure" provision of the NBA, the *Kroske* court went on to find:

> It follows that the provision of the WLAD prohibiting age discrimination does not conflict with the at-pleasure provision of the National Bank Act. The WLAD [anti-age discrimination provision] mirrors the substantive provision of the ADEA and is interpreted consistently with the ADEA. Thus, in the absence of clear congressional intent to the contrary, we hold that Kroske's claim of age discrimination is not preempted by [the NBA], as limited by the ADEA.

*Id.* Despite this conclusion, however, the court also stated that it was "mindful ... of Congress's intent to create a national banking system with 'uniform and univer-

sal operation through the entire territorial limits of the country.'" *Id.* at 989 (quoting *Talbott v. Bd. of Comm'rs*, 139 U.S. 438, 443, 11 S.Ct. 594, 35 L.Ed. 210 (1891)). "We therefore recognize that state law prohibitions against discriminatory termination that are not consistent with federal anti-discrimination laws may frustrate the congressional purpose of uniform regulation reflected in the [NBA]." *Id.* "Nonetheless, the fact that some state law provisions prohibit termination on grounds that are more expansive than the grounds set forth in federal law does not undermine our conclusion that Kroske's age discrimination claim under the WLAD, which substantively mirrors a claim under the ADEA, is not preempted." *Id.* In summary, the court stated, "Congress did not intend for [the NBA] to preempt the WLAD employment discrimination provisions, at least insofar as they are consistent with the prohibited grounds for termination under the ADEA." *Id.*

■ This Court finds the analysis in *Kroske* compelling in its analysis of applicable case law and adopts its reasoning to conclude that Title VII and the ADEA implicitly repeal in part the "dismiss at pleasure" provision of § 1432(a). Specifically, the Court finds that the authority granted to FHLB under § 1432(a) to "dismiss at pleasure" its employees does not encompass the right to terminate an employee in a manner violative of either the ADEA or Title VII. Accordingly, the question in the present case now becomes whether Plaintiff's claims of age and race discrimination under the ICRA conflict

---

**14.** The court relied, in part, on *Silver v. N.Y. Stock Exchange*, 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), to determine that repeal of the "at pleasure" provision was necessary. *Kroske*, 432 F.3d at 987. Therein, the United States Supreme Court stated that "'it is a cardinal principle of construction that repeals by implication are not fa-

vored'.... Repeal is to be regarded as implied only if necessary to make the [statute in question] work, and even then only to the minimum extent necessary." *Silver*, 373 U.S. at 357, 83 S.Ct. 1246 (quoting *United States v. Borden Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939)).

with the "dismiss at pleasure" provision of the FHLBA, as modified by Title VII and the ADEA, such that all or part of the ICRA is preempted. To this end, *Kroske* provides only a starting point for the Court's analysis.

3. *Does the ICRA conflict with the FHLBA's "dismiss at pleasure" provision, as modified by Title VII and the ADEA?*

As noted, *Kroske* implicitly recognized that the preemption analysis necessarily must evaluate whether the state law provisions at issue are or are not consistent with federal antidiscrimination statutes. *See Kroske,* 432 F.3d at 989 ("Congress did not intend ... to preempt [state anti-discrimination laws], at least insofar as they are consistent with the prohibited grounds for termination under the ADEA.").[15] In this case, it is clear that the ICRA differs in several ways from both Title VII and the ADEA.

While Iowa courts look to federal law for guidance in analyzing claims under the ICRA, they have made clear that they are not bound by federal law. *See McElroy v. State,* 703 N.W.2d 385, 391 (Iowa 2005). Indeed, there are distinct differences in both substance and remedies between the ICRA and Title VII and the ADEA. For instance, the ICRA permits individual liability against supervisors, whereas Title VII does not. *See Vivian v. Madison,* 601 N.W.2d 872, 878 (Iowa 1999) ("[W]e hold that a supervisory employee is subject to individual liability for unfair employment practices under [the ICRA]."); *Bonomolo–Hagen v. Clay Central–Everly Comm. Sch. Dist.,* 121 F.3d 446, 447 (8th Cir.1997) ("Our Court quite recently has squarely held that supervisors may not be held individually liable under Title VII."). Individual liability under the ADEA has not been squarely addressed by the Eighth Circuit, but other circuit courts of appeals have held that the ADEA does *not* provide for individual liability. *See Medina v. Ramsey Steel Co.,* 238 F.3d 674, 686 (5th Cir.2001); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir.1995); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.1994); *Miller v. Maxwell's Int'l, Inc. .,* 991 F.2d 583, 587 (9th Cir.1993). Moreover, "[m]ost courts in the Eighth Circuit [have found] that the Eighth Circuit will, if confronted with the issue, hold that individual liability is ... impermissible under the ADEA." *Smith v. Bankers Life & Cas. Co.,* 519 F.Supp.2d 964, 967 (S.D.Iowa 2007) (collecting cases). Further, the ICRA incorporates an aiding and abetting provision; Title VII does not. *See* Iowa Code § 216.11; *Vivian,* 601 N.W.2d at 873. "The remedial sections of the ICRA apparently extend beyond those found in Title VII in that a claimant may commence a cause of action for relief against *a person* ... alleged to have committed a discriminatory or unfair practice.... Title VII does not authorize claims against persons." *Vivian,* 601 N.W.2d at 873–74 (*comparing* Iowa Code

**15.** Neither *Katsiavelos* nor *Moodie* addressed what effect substantial inconsistencies between state and federal anti-discrimination laws would have on the preemption analysis when present. *See Katsiavelos,* 1995 WL 103308, at *4 (finding that implementation of the state law would not stand as an obstacle to the federal law because the Illinois Human Rights Act "is consistent with [federal anti-discrimination laws]"); *Moodie,* 831 F.Supp. at 335 (concluding that the New York State Human Rights Law is not preempted because it "is not inconsistent with federal employment discrimination law"). In a subsequent decision in *Moodie v. Federal Reserve Bank of New York,* however, the Southern District of New York essentially echoed *Kroske's* holding, stating "Congress did not intend [the Federal Reserve Act] to preempt state anti-discrimination laws that are consistent with federal anti-discrimination legislation." *Moodie v. Fed. Reserve Bank of New York,* 835 F.Supp. 751, 753 (S.D.N.Y.1993).

§ 216.15(1) *with* 42 U.S.C. § 2000e–5(b)). The ADEA prohibits discrimination against persons forty years of age or older, while the ICRA is "age-neutral." *See Weddum v. Davenport Comm. Sch. Dist.,* 750 N.W.2d 114, 118 (Iowa 2008); *compare* Iowa Code § 216.6(1)(a) *with* 29 U.S.C. § 623(a)(1). The ICRA permits recovery for emotional distress damages for the entire period a plaintiff's rights were violated; Title VII limits plaintiffs to 300 days of emotional distress damages; and the ADEA does not permit emotional distress damages at all. *Accord Channon v. United Parcel Serv., Inc.,* 629 N.W.2d 835 (Iowa 2001); *Madison v. IBP, Inc.,* 257 F.3d 780 (8th Cir.2001); *Fiedler v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 809–10 (8th Cir.1982). Title VII caps compensatory and punitive damages awards, while the ICRA does not. *See* 42 U.S.C. § 1981a; *Kimzey v. Wal–Mart Stores, Inc.,* 107 F.3d 568, 576 (8th Cir.1997) (noting that the statutory cap applies to Title VII claims, but not to state anti-discrimination claims).

While the differences noted are not intended to be an exhaustive compilation of the distinctions between the ICRA and Title VII and the ADEA, it is clear that such differences are more expansive than those recited in *Kroske.*[16] At a minimum, however, the Court believes that *Kroske,* and indeed, even *Ana Leon T.* and *Andrews,* support a finding that the provisions of the ICRA that are in direct conflict with Title VII and the ADEA, such as those noted above, must be preempted. Indisputably, this means that Plaintiff's claims against the individual Defendants, Swanson, Spaeth, and Guttau, are preempted because individual liability against those defendants is impermissibly in conflict with both Title VII and the

ADEA. Likewise, with regard to Defendant FHLB, to the extent that applicable provisions of the ICRA are inconsistent with Title VII or the ADEA, such provisions must be preempted.

Given these conclusions, one question remains: Should the ICRA be preempted only to the extent that its provisions are in direct conflict with federal anti-discrimination laws or should it be preempted in its entirety? The answer necessarily depends on an analysis of whether the provisions of the ICRA conflict with the "dismiss at pleasure" provisions of federal banking acts, as modified by Title VII and the ADEA, to such a degree that it is "impossible for a private party to comply with both state and federal requirements" or such that the enforcement of the ICRA "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English,* 496 U.S. at 78–79, 110 S.Ct. 2270. Courts that have addressed similar issues have produced two competing lines of jurisprudence.

a. *Courts finding complete preemption.*

Several courts considering the question of what to do when state anti-discrimination laws differ from, or are inconsistent with, federal anti-discrimination laws, have concluded that the state law is wholly preempted by federal "dismiss at pleasure" provisions. For example, in *Evans v. Federal Reserve Bank of Philadelphia,* the Eastern District of Pennsylvania examined the question of whether the "dismiss at pleasure" language of the Federal Reserve Act operated to preempt a plaintiff's claims of employment discrimination under Pennsylvania law. No. 03–4975, 2004 WL 1535772 (E.D.Pa. July 8, 2004).

---

**16.** The only difference between the WLAD and the ADEA noted in *Kroske* was that the WLAD "prohibits termination on grounds that are more expansive than the grounds set forth in federal law." *Kroske,* 432 F.3d at 989.

In reaching its conclusion that "state anti-discrimination laws which expand the rights and remedies available under federal antidiscrimination laws" are so preempted, the *Evans* court stated:

> [S]ubjecting the federal reserve banks to state employment laws and regulations which broaden the rights and remedies available under federal law will subject the federal reserve banks, and possibly their employees, to a myriad of different laws and regulations which vary from jurisdiction to jurisdiction. The lack of uniformity in the employment laws and regulations to which the banks would be subjected would in turn frustrate the intent of Congress to allow the federal reserve banks the "greatest latitude possible" in terminating their employees. Moreover, while courts are generally in agreement that federal anti-discrimination laws have limited the discretion with which the federal reserve banks may hire and fire employees, there is not indication in the Federal Reserve Act that Congress ever intended for state laws to further restrict the federal reserve banks' discretion.

*Id.* at *5 (internal citations and quotations omitted).[17] The *Evans* court recognized two significant distinctions between the Pennsylvania Human Rights Act ("PHRA") and Title VII, namely that the PHRA permits cause of actions against individuals, while Title VII does not; and Title VII caps total compensatory and punitive damages awards, while the PHRA does not.[18] While the *Evans* court recognized that, theoretically, those portions of state employment discrimination laws that mirror federal anti-discrimination laws could escape preemption,[19] it declined to adopt such an approach because it "would require the Court to essentially rewrite the relevant provisions of the PHRA to parrot Federal anti-discrimination law. In so doing, the Court would risk frustrating the intent of the publicly elected legislature which enacted the PHRA in the first place." *Evans,* 2004 WL 1535772, at *6. Accordingly the Evans court determined that "the appropriate response to the preemption problem presented in this case is to dismiss Plaintiff's state law claims in their entirety."[20] *Id.* at *6.

17. Without explicitly adopting the position of the California Supreme Court's decision in *Peatros v. Bank of America,* 91 Cal.Rptr.2d 659, 990 P.2d at 539, which undertakes largely the same analysis and reaches many of the same conclusions as *Kroske,* the *Evans* court appears to have accepted *Peatros'* determination that the "dismiss at pleasure" language of the NBA was impliedly amended by the ADEA and Title VII. *See Evans,* 2004 WL 1535772, at *4–5.

18. The PHRA is similar to the ICRA in both regards.

19. In *Peatros,* the California Supreme Court determined that the NBA, as amended by Title VII and the ADEA, was not in conflict with state law provisions that parallel their federal analogs. *Peatros,* 91 Cal.Rptr.2d 659, 990 P.2d at 552–53. Where some state law provisions were found to be in conflict with federal provisions, the *Peatros* court deter-

mined that the NBA, "as impliedly amended by Title VII and the ADEA, preempts [state law] to the extent that it conflicts, but does not to the extent that it does not." *Id.* at 553.

20. The *Evans* court specifically declined to permit the plaintiff's state law discrimination claims to proceed to the extent that they did not conflict with federal anti-discrimination laws:

> The approach advocated by Justice Mosk in the *Peatros [v. Bank of America,* 990 P.2d at 539] decision, in which the relevant state anti-discrimination laws are only preempted to the extent that they actually conflict with federal anti-discrimination laws, would allow Plaintiff's state law causes of action to remain in the case, subject to the requirement that they be interpreted to provide the same level of protection as is available under Title VII. However, the Court declines to follow Justice Mosk's approach

In 2006, the Third Circuit Court of Appeals adopted the *Evans* approach to conflict preemption in *Fasano v. Federal Reserve Bank of New York*, holding that the "dismiss at pleasure" language of the Federal Reserve Act "preempts *any* state employment law that goes beyond the remedies and protections provided by [ ] federal laws" in the sense that "additional state remedies surely 'stand [ ] as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'"[21] *Fasano*, 457 F.3d 274, 288 (3d Cir.2006) (quoting *English*, 496 U.S. at 79, 110 S.Ct. 2270). The state laws at issue in *Fasano* went "well beyond their federal counterparts," permitting individual liability, individual aiding and abetting liability, and allowing employees to pursue a claim directly with the Superior Court without first pursuing administrative remedies. *Id.* at 289. Like the *Evans* court, the *Fasano* Court explicitly rejected the notion that the state anti-discrimination laws could survive preemption if they were "pare[d] back" to "exactly match" federal anti-discrimination laws:

> We agree with [the *Evans* court] that instead of attempting to 'essentially rewrite the relevant provisions of the [state law] to parrot Federal anti-discrimination law,' and 'risk frustrating the intent of the publicly elected legislature which enacted the [state law] in the first place,' dismissal is appropriate. There is simply no way to give full effect to such state laws while picking and choosing which parts of them may apply.
>
> . . .

New Jersey undoubtedly has a very strong interest in requiring employers to abstain from discriminatory practices, the range of which New Jersey has chosen to define as broadly as possible. Nonetheless, 'preemption analysis does not involve a balancing of state and federal interests. Once it is determined that there is a conflict between a valid federal law and a state law, the state law must give way." *Surrick [v. Killion]*, 449 F.3d [520], 533 [3d Cir.2006]. State anti-discrimination laws that do not mirror their federal analogs cannot be validly applied to [the Federal Reserve Bank] by virtue of conflict preemption with [the "dismiss at pleasure" language of the Federal Reserve Act].

*Id.* at 290 (quoting *Evans*, 2004 WL 1535772, at *5).

b. *Courts finding only partial preemption.*

Explicitly rejecting what it referred to as the "wholesale" preemption approach employed by *Evans* and *Fasano*, the Eastern District of New York, in *James v. Federal Reserve Bank of New York*, 471 F.Supp.2d 226, 236 (E.D.N.Y.2007), adopted instead the "retail" preemption approach of *Peatros v. Bank of America*, which concluded that federal law preempted the relevant state statute " 'to the extent that it conflicts, but it does not to the extent that it does not." *Peatros*, 91 Cal. Rptr.2d 659, 990 P.2d at 553 (relying on the following language in *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 476, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996) (per curiam): "In a preemption case

---

in this case, as it would require the Court to essentially rewrite the relevant provisions of the [Pennsylvania Human Relations Act] to parrot Federal antidiscrimination law. In so doing, the Court would risk frustrating the intent of the publicly elected legislature which enacted the PHRA in the first place. *Evans*, 2004 WL 1535772, at *6.

**21.** Like *Evans, Peatros*, and *Kroske*, the *Fasano* court adopted the position that the "dismiss at pleasure" provision of the FRA was impliedly amended by federal antidiscrimination laws. *Fasano*, 457 F.3d at 285–86 ("[W]e are compelled to conclude that the ADA and 12 U.S.C. § 1831j impliedly amended [the FRA].").

... state law is displaced only 'to the extent that it actually conflicts with federal law.' The rule [is] that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it."). In making its determination, the *James* court stated:

This Court adopts the "retail" preemption approach of *Moodie, Peatros,* and *Shaw [v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ] rather than "wholesale" preemption as advised in *Evans* and *Fasano.* Where the question is one of implied preemption, the Supreme Court has called for restraint. State laws are to be found preempted only as far as is necessary to dispose of the instant case. *Dalton,* 516 U.S. at 476, 116 S.Ct. 1063. As in *Shaw,* a risk exists here that "wholesale" preemption will frustrate the intent of Congress to establish a joint federal/state system for enforcing anti-discrimination laws. 463 U.S. at 102, 103 S.Ct. 2890. Although "retail" preemption may present practical difficulties, these are mitigated by the familiarity of state employment agencies with the federal anti-discrimination laws. *Id.* at 106, 103 S.Ct. 2890. The concern expressed in *Fasano* and *Evans*-that "retail" preemption amounts to a judicial attempt to rewrite state law-appears unfounded. To the contrary, the "retail" approach permits state employment law to be enforced to a greater extent than does the "wholesale" approach recommended in those cases, which treats an entire state anti-discrimination scheme as a nullity where it deviates in any respect from federal law. Accordingly, the Court finds that the NYSHRL is preempted, with regard to the Federal Reserve Bank of New York, only insofar as it exceeds the requirements of Title VII and the ADA.

*Id.* at 236. The Northern District of California has likewise determined that Kroske

stands for the proposition that "Court[s] can limit relief for [a] Plaintiff's [state law anti-discrimination] claims against Defendant [Federal Home Loan Bank of San Francisco] to that which is available under Title VII." *Lambright v. Fed. Home Loan Bank of San Francisco,* No. C074340CW, 2007 WL 4259552, at *5 (N.D.Cal. Dec.3, 2007) (determining that a plaintiff's state law claims survived preemption "only to the extent of allowing against FHLB's claims under state law that mirror Title VII").

Having reviewed the relevant case law and the arguments of the parties, the Court believes that the "retail" approach advocated by *James* and the reasoning therein is most consistent with the law of conflict preemption. Defendants admit that "dismiss at pleasure" provisions are impliedly amended to comply with the provisions of Title VII and the ADEA. Defs.' Reply at 3. They argue, however, that this implied repeal of the "dismiss at pleasure" provision "does not in any way diminish the preemptive force of the FHLBA as to state law." *Id.* Defendants argument in this regard, however, presumes that the "dismiss at pleasure" provision preempts the entire field of employment law with respect to Federal Home Loan Banks. The mere statement in 12 U.S.C. § 1432(a) that FHLB may "dismiss at pleasure" its employees, however, does not create a regulatory scheme so pervasive that field preemption can be inferred. *See Hillsborough County, Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (stating that field preemption occurs when Congress's scheme of regulation is so complete that it appears clear that Congress "left no room for supplementary state regulation" (citations omitted)). Thus, state law is only preempted where it is in conflict with the "dismiss at pleasure" provision as that provision has been amended by the ADEA and Title VII. Such a conflict only exists if

the provisions of the state and federal laws make it "impossible for a private party to comply with both state and federal requirements" or otherwise "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. at 78–79. If Plaintiff's ICRA claims are limited to the extent that they comport with Title VII and the ADEA, it seems clear that it would not be impossible for FHLBs to comply with both state and federal law, since FHLBs are required to comply with the provisions of Title VII and the ADEA in any event.[22] Moreover, expecting FHLBs to comply with state law to the extent it comports with and mirrors federal law certainly cannot be seen as

standing as an obstacle to Congressional goals and objectives.

By adopting this approach to preemption, FHLBs will be expected to do no more than comply with the provisions of state law that mirror provisions of federal law to which it must adhere. Both the Supreme Court and the Eighth Circuit have repeatedly stated with regard to conflict preemption that "where Congress has not completely displaced state regulation in a specific area, state law is nullified *to the extent that it actually conflicts* with federal law." *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. 2371 (emphasis added); *see English*, 496 U.S. at 79, 110 S.Ct. 2270; *Kinley Corp. v. Iowa Util. Bd.*, 999 F.2d 354, 358 (8th Cir.1993).[23] It is true

**22.** Indeed, absent a finding of field preemption, it is difficult to say that Congress could not have intended to permit state law, to the extent it is consistent with federal antidiscrimination laws, to provide remedies for persons aggrieved by the actions of national banks. As *Kroske* recognized, both Title VII and the ADEA expressly disclaim any preemptive effect on state law and even the Supreme Court has recognized " 'the importance of state fair employment laws to the federal enforcement scheme.' " *Kroske*, 432 F.3d at 987–88 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

**23.** Both *Evans* and *Fasano* recognized this traditional principle of conflict preemption, but nonetheless found the state law claims, even to the extent that they did *not* conflict with federal anti-discrimination laws, preempted. The reason for the preemption in those cases, however, does not appear as concerned with the traditional principle that preemption should be applied sparingly, but rather practical concerns about manageability and frustrating the full remedial purposes of the state laws. *See Evans*, 2004 WL 1535772, at *6 (deciding to preempt even those portions of the state anti-discrimination law that were not in direct conflict with federal anti-discrimination laws because "rewrit[ing] the relevant provision [of the state law] would risk frustrating the intent of the publicly elected [state] legislature"); *Fasano*, 457 F.3d at

288 (concluding that the "wisest approach when faced with an entity undeniably crucial to the federal monetary system, to which Congress has clearly expressed the intent to grant the broadest possible power and right to dismiss employees, is to limit remedies to those already authorized by Congress").

Interestingly, in its conflict preemption analysis, *Fasano* explicitly stated that, "[b]ecause the [Federal Reserve Act] preempts state employment laws that provide remedies *beyond* those permitted in the ADA ... [the state laws] are preempted *to the extent of these divergencies.*" *Id.* (emphasis added). In deciding that state law claims should nonetheless be preempted, however, the *Fasano* court noted that the state law at issue provided a significantly lower threshold for determining what constitutes a "disability" and permitted employees to directly pursue claims in Superior Court without first pursuing administrative remedies. *Id.* at 289. Given that these provisions would subject employers to liability using *lesser* standards than those of the ADEA, it would be virtually impossible to enforce the state law provisions without "rewriting" them to correlate to the higher threshold requirements of the ADEA, making total preemption more reasonable because of the direct conflict with fundamental premises. Such concerns are not present in this case, however, as the ICRA generally provides for claims and remedies that correspond to, but also *exceed*, those permitted by Title VII and the ADEA.

that, since Plaintiff is entitled to no greater relief than that to which he would be entitled under Title VII and the ADEA, it would certainly make sense for all involved for Plaintiff to assert Title VII and ADEA claims, rather than to maintain his ICRA claims. Plaintiff, however, is the master of his own complaint and is not obligated to do what is easy; rather, he may assert any legally cognizable claim as he sees fit.

Accordingly, the Court finds that, on the record now before it, it is neither impossible for FHLB to comply with the ICRA (to the extent that it is deemed limited by federal antidiscrimination laws) nor does the ICRA (as so limited) stand as an obstacle to accomplishing the full purposes and objectives of Congress. Plaintiff's claim under the ICRA may proceed to the extent that the provisions of the ICRA are not in conflict with the provisions of Title VII and the ADEA.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Strike (Clerk's No. 10) is GRANTED. Defendants' Motion to Dismiss (Clerk's No. 11) is GRANTED with regard to Defendants Swanson, Spaeth, and Guttau and it is GRANTED with regard to Plaintiff's claim for violation of Iowa Code Chapter 729.4 in Count II. With respect to Defendant Federal Home Loan Bank, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART, Specifically, to the extent that Plaintiff's claim against Federal Home Loan Bank under the ICRA is in direct

conflict with Title VII or the ADEA, the claim is preempted.[24]

IT IS SO ORDERED.

---

24. In essence, to the extent that the ICRA provides lesser remedies or protections than either Title VII or the ADEA, Plaintiff is bound by the terms of the ICRA. To the extent, however, that the ICRA provides greater remedies or protections than those afforded by Title VII or the ADEA, Plaintiff's ICRA claims are limited to the remedies and protections of the federal laws.