[No. B226143. Second Dist., Div. Four. June 6, 2011.]

ROBERT QUINN, Plaintiff and Appellant, v.
U.S. BANK NA et al., Defendants and Respondents.

COUNSEL

Felahy Law Group, Allen B. Felahy, Oscar Ramirez, Boris Sorsher and Zack Domb for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Lori A. Bowman, Linda S. Goldman and Matthew Effland for Defendants and Respondents.

OPINION

SUZUKAWA, J.—

## INTRODUCTION

Plaintiff filed the present action alleging disability discrimination in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) and state common law against his former employer (a national bank) and his former supervisor. The bank and supervisor moved for summary judgment, asserting that plaintiff's causes of action were preempted by section 24 of the National Bank Act, title 12 United States Code section 24, paragraph Fifth (section 24), which grants national banks the power to dismiss officers "at pleasure." The trial court agreed that plaintiff's causes of action were preempted and granted summary judgment.

We reverse in part. We conclude that section 24's "at pleasure" clause was impliedly amended by the Americans with Disabilities Act of 1990 (ADA), title 42 United States Code sections 12101 to 12213. As amended, section 24 preempts FEHA only to the extent that FEHA's disability provisions exceed the requirements of the ADA. Because the bank has not demonstrated that plaintiff's FEHA claims are preempted in their entirety by section 24, we reverse the grant of summary judgment for the bank as to those claims.

Plaintiff concedes that his claim against his former supervisor is preempted, and we affirm the grant of summary judgment in the supervisor's favor.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert Quinn (plaintiff) is a former senior vice-president of defendant U.S. Bank NA. He was terminated on May 7, 2008, by his supervisor, defendant Wayne Brander. On April 24, 2009, plaintiff filed a discrimination complaint with the Department of Fair Employment and Housing (DFEH), alleging that he was denied accommodation, harassed, and terminated because of a physical disability. Plaintiff received a right-to-sue letter on April 27, 2009, and he filed the present action on August 21, 2009.

The operative first amended complaint alleges that U.S. Bank and Brander (collectively, the Bank) (1) terminated plaintiff because he suffers from type 2 diabetes, (2) refused to accommodate plaintiff's diabetes, and (3) harassed plaintiff for seeking accommodations necessary to treat his diabetes. It further alleges that the Bank's conduct constituted disability/medical condition discrimination in violation of FEHA (first cause of action), wrongful termination in violation of public policy (second cause of action), harassment and hostile work environment based on disability/medical condition in violation of FEHA (third cause of action), and intentional infliction of emotional distress (fourth cause of action).

The Bank filed a motion for summary judgment or summary adjudication. It asserted that each of plaintiff's causes of action was completely preempted by section 24, Fifth, which grants national banks the power "[t]o . . . appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them *at pleasure*." (Italics added.) Alternatively, the Bank urged that even if plaintiff's FEHA claims were not completely preempted, they were preempted to the extent that they relied on provisions of FEHA that are inconsistent with the ADA. The Bank identified two such inconsistent provisions. First, while FEHA provides for supervisor liability, the ADA does not. Thus, the Bank contended that plaintiff's claims against Brander were preempted. Second, the ADA provides a shorter statute of limitations than FEHA, requiring a claimant to file an administrative claim within 300 days of the last discriminatory act and to file suit within 90 days of receiving a right-to-sue letter. Plaintiff did not file his action within the federal limitations period; thus, the Bank contended that plaintiff's claims were preempted in their entirety.

Plaintiff opposed the motion. He contended that the Bank could not invoke preemption because it could not establish that his termination had been

ratified by the Bank's board of directors, as required by section 24. Further, he urged (1) section 24 does not preempt FEHA claims, including claims for disability discrimination, because section 24 has been amended by subsequent federal civil rights legislation; (2) even if some FEHA claims are preempted by section 24, the present claims are not because the ADA impliedly amended section 24 and FEHA prohibits the same practices that are unlawful under the ADA; and (3) the Bank's contention that plaintiff's FEHA claims are barred by the shorter statute of limitations of the ADA is not supported by any case law and is meritless.

The trial court granted the motion. As a preliminary matter, it rejected plaintiff's contention that the Bank was required to show that Brander consulted with the board before deciding to terminate him. Instead, the court said that all the Bank had to show was that the board ratified the termination; here, it did so. The court also found that section 24 preempted plaintiff's FEHA claims. It relied on *Peatros v. Bank of America* (2000) 22 Cal.4th 147 [91 Cal.Rptr.2d 659, 990 P.2d 539] (*Peatros*), in which the California Supreme Court considered the extent to which title VII of the Civil Rights Act of 1964, title 42 United States Code section 2000e et seq. (Title VII), and the Age Discrimination in Employment Act of 1967 (ADEA; 29 U.S.C. § 621 et seq.) preempted section 24. The trial court quoted *Peatros* as follows: " '[S]ection 24, Fifth, as impliedly amended by Title VII and the ADEA, preempts FEHA to the extent that, unlike Title VII and the ADEA, FEHA confers on officers of a national bank a right against dismissal on the ground of physical disability, mental disability, medical condition . . . . [¶] . . . [¶] Also, section 24, Fifth, as impliedly amended by Title VII and the ADEA, preempts FEHA to the extent that, unlike Title VII and the ADEA, FEHA creates a remedy for violation of the right of an officer of a national bank against dismissal on the ground of physical disability, mental disability, medical condition . . . in the form of any relief whatsoever . . . .' " The trial court characterized these statements as dicta (presumably because the *Peatros* plaintiff alleged race and age discrimination, not disability discrimination), but it nonetheless held that they required a finding that plaintiff's physical and medical disability claims were preempted. It explained: "The question that must be resolved here, then, is whether plaintiff's medical and physical disabilities claims against Defendants Bank and Brander are preempted. While technically dicta, *Peatros, supra,* 22 C.4th 147 answers this question: physical disability claims under California law do not 'substantially mirror' analogous federal law. [¶] Indeed, a cursory review of California disability discrimination law confirms that it provides more substantive protection and is more comprehensive than its federal counterpart." Thus, the court said, "[s]tate medical and physical disability claims . . . are thus re-exempted."

Further, the court said, plaintiff's FEHA claims were untimely because plaintiff "did not file a claim until April 24, 2009, which is beyond the

300-day limitation period provided under federal law. [Citation.] Moreover, Plaintiff alleges that he received a right to sue letter on April 27, 2009. [Citation.] Plaintiff, however, did not file his Complaint until August [21], 2009, beyond the ninety-day limitations period provided under federal law. [Citation.] Accordingly, Plaintiff neither timely exhausted his administrative remedies under the ADA nor filed a court action within the time limitations set forth under the ADA. The Bank, therefore, is entitled to summary judgment as to Plaintiff's first cause of action, and both the Bank and Wayne Brander are entitled to summary judgment as to Plaintiff's third cause of action, on the additional ground that the state and federal statute of limitations are different and there is clear conflict under Peatros, *Supra.*"[1]

The court entered judgment for defendants on July 2, 2010. Plaintiff timely appealed.

## STANDARD OF REVIEW

"We review de novo the trial court's order granting summary judgment. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) In particular, questions of statutory construction are questions of law and also subject to de novo review. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].)" (*Sturgeon v. County of Los Angeles* (2010) 191 Cal.App.4th 344, 350 [119 Cal.Rptr.3d 332].) " 'The trial judge's stated reason for granting summary judgment is not binding on us because we review its ruling, not its rationale.' (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074 [85 Cal.Rptr.2d 627].)" (*United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1009 [118 Cal.Rptr.3d 834].)

## DISCUSSION

Plaintiff's sole contention on appeal is that his state law claims for disability discrimination under FEHA are not preempted by section 24.[2] Specifically, he contends that section 24 was impliedly amended by the ADA and, as amended, section 24 does not preempt the disability discrimination provisions of FEHA because they are " 'substantively the same' " as analogous provisions of the ADA. As relevant here, he notes that diabetes is

---

[1] The court also found that section 24 preempted plaintiff's common law claims, noting that state and federal courts have interpreted that section as "preempting all state common law causes of action which purport to regulate a national bank's employment practices in the context where a bank officer is appointed and his termination is ratified by the Board."

[2] On appeal, plaintiff does not challenge the trial court's conclusion that section 24 preempts plaintiff's state common law claims. Thus, our discussion is limited to the preemptive effect of section 24 on plaintiff's FEHA claim.

defined as a disability under both FEHA and the ADA. Further, while he acknowledges that FEHA and the ADA have different filing deadlines and individual liability provisions, he contends that these differences are irrelevant to the preemption issue.

The Bank disagrees. It urges that *Peatros* requires us to conclude that section 24 preempts *all* state regulation of national banks, including regulation of employment disputes under FEHA. Alternatively, the Bank contends that if state antidiscrimination laws are not entirely preempted, they are preempted if, like FEHA, they do not "mirror" federal law. Finally, the Bank urges that, at a minimum, section 24 preempts those provisions of FEHA that, like FEHA's statute of limitations and individual liability provisions, are inconsistent with federal antidiscrimination law. Thus, the Bank contends, because plaintiff did not file his administrative and civil claims within the time prescribed by the ADA, his claims are time-barred; further, because the ADA does not permit claims against individual defendants, plaintiff's claims against Brander must be dismissed.

## I. *Federal Preemption Generally*

■ "Ever since the decision in *McCulloch v. Maryland* (1819) 17 U.S. (4 Wheat.) 316, 427 [4 L.Ed. 579], 'it has been settled that state law that conflicts with federal law is "without effect." ' [Citations.] [¶] Whether federal law preempts state law is fundamentally a question whether Congress has intended such a result. [Citations.]" (*Peatros, supra*, 22 Cal.4th at p. 157.)

Preemption of state law by federal law is found in three circumstances. "First, there is so-called 'express preemption': 'Congress can define explicitly the extent to which its enactments pre-empt state law.' [Citations.] [¶] Second, there is so-called 'field preemption': '[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.' [Citations.] [¶] Third, there is so-called 'conflict preemption': '[S]tate law is pre-empted to the extent that it actually conflicts with federal law.' [Citations.] Such conflict must be 'of substance and not merely trivial or insubstantial.' [Citation.] It exists when it is 'impossible . . . to comply with both state and federal requirements' [citations] or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' underlying federal law [citations]. Although 'state law is pre-empted to the extent that it actually conflicts with federal law' [citation], it is preempted only to that extent and no further [citation]." (*Peatros, supra*, 22 Cal.4th at pp. 157–158.)

## II. *Section 24 Generally*

"The statute that we now call the National Bank Act of 1864 was enacted by Congress more than 135 years ago. Its purpose was, at bottom, 'to

facilitate . . . a "national banking system . . ." ' [citations], a system 'coextensive with the territorial limits of the United States, and with uniform operation within those limits' [citation]." (*Peatros, supra,* 22 Cal.4th at p. 159.)

As presently codified, section 24 provides that a national bank "shall have power" "[t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure,* and appoint others to fill their places." (12 U.S.C. § 24, Fifth, italics added.)

III. *The Supreme Court's Analysis of Section 24 Preemption in* Peatros

The seminal California case addressing section 24 preemption is *Peatros, supra,* 22 Cal.4th 147. *Peatros* was brought by a bank vice-president who contended that Bank of America (bank) terminated her because of her race and age in violation of FEHA and other state laws. (22 Cal.4th at p. 154.) The bank moved for summary judgment, contending that section 24 empowered it to dismiss plaintiff for any reason and completely preempted plaintiff's state law claims. (22 Cal.4th at pp. 154–155.) The trial court granted summary judgment, and the Supreme Court granted review to decide the " 'important and difficult' " question of whether "[i]n the face of Title VII and the ADEA, does section 24, Fifth, preempt FEHA?" (*Id.* at p. 154.)

A. *The Lead Opinion in* Peatros

The lead opinion, authored by Justice Mosk and joined by two other justices, began by noting an "apparent conflict" between section 24 and federal antidiscrimination laws. "In pertinent part, section 24, Fifth, grants a national bank the unlimited power to dismiss any of its officers at pleasure by its board of directors. It thereby bestows absolute immunity from liability arising from its exercise. But, in pertinent part, Title VII and the ADEA confer on officers of a national bank, as employees, a right against dismissal on the ground of race, color, religion, sex, national origin, or age. They also create a remedy for its violation." (*Peatros, supra,* 22 Cal.4th at p. 167.) This conflict "cannot be reconciled" because "[o]ne cannot reasonably read section 24, Fifth, with its unlimited power and absolute immunity, to allow an exception for the later enacted Title VII and the ADEA . . . ." (*Id.* at p. 168.) Thus, the lead opinion said, it must conclude that section 24 had been impliedly amended by Title VII and the ADEA: "As impliedly amended by Title VII and the ADEA, section 24, Fifth, grants a national bank a *limited* power to dismiss any of its officers at pleasure by its board of directors, not extending to dismissal on the ground of race, color, religion, sex, national

origin, or age. And, as impliedly amended by Title VII and the ADEA, section 24, Fifth, bestows a *qualified* immunity from liability arising from its exercise, allowing only specified relief, with limits and/or bars against compensatory and/or punitive damages. [Fn. omitted.]" (22 Cal.4th at pp. 168–169.)

The lead opinion then turned to the question "whether, in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA." (*Peatros, supra*, 22 Cal.4th at p. 169.) It concluded that section 24 does not expressly preempt FEHA because it "does not contain the requisite explicit language." (22 Cal.4th at p. 169.) Similarly, it found no field preemption of FEHA because the National Bank Act " 'is not a comprehensive statutory scheme occupying the entire field relating to national banks.' " (22 Cal.4th at p. 169.) However, it found conflict preemption to the extent that provisions of the two statutes were not the same. It explained: "[S]ection 24, Fifth, as impliedly amended by Title VII and the ADEA, effectively establishes a *maximum* level of protection for officers of a national bank that FEHA may not exceed: It grants a national bank a power to dismiss any of its officers at pleasure by its board of directors, limited only against dismissal on the ground of race, color, religion, sex, national origin, or age. And it bestows an immunity from liability arising from its exercise, qualified to allow only specified relief, with limits and/or bars against compensatory and/or punitive damages. [Fn. omitted.]" (*Id.* at p. 172.) Thus, "[t]he conflict preemption of FEHA by section 24, Fifth, as impliedly amended by Title VII and the ADEA, means this: As impliedly amended by Title VII and the ADEA, section 24, Fifth, preempts FEHA to the extent that it conflicts, but it does not to the extent that it does not." (*Ibid.*)

Applying these principles, the lead opinion concluded that section 24, as impliedly amended by Title VII and the ADEA, "preempts FEHA to the extent that, unlike Title VII and the ADEA, FEHA confers on officers of a national bank a right against dismissal on the ground of physical disability, mental disability, medical condition, marital status, or ancestry (insofar as it is not reducible to race, color, national origin, etc.)," but "does not preempt FEHA to the extent that, like Title VII and the ADEA, FEHA confers on officers of a national bank a right against dismissal on the ground of race, religious creed . . . , color, national origin, sex, age, or ancestry (insofar as it is reducible to race, color, national origin, etc.)." (*Peatros, supra*, 22 Cal.4th at p. 172.) It noted that in so stating, "we have considered *only* whether section 24, Fifth, preempts FEHA *in the face of Title VII and the ADEA*—not whether it preempts it in the face of other federal law, such as the Americans with Disabilities Act of 1990, which is codified at section 12101 et seq. of title 42 of the United States Code, and especially title I thereof, denominated 'Employment.' In so doing, we have concluded *only* that section 24, Fifth, has been impliedly amended *by Title VII and the ADEA*—not whether it has

been impliedly amended or repealed by such other law. These and similar issues await resolution another day." (*Id.* at p. 176, fn. 8.)

### B. *The Concurring and Dissenting Opinion in* Peatros

In a concurring and dissenting opinion, Justice Kennard took a different approach. She concluded that the plaintiff was not an "officer" within the meaning of the National Bank Act and, thus, section 24 did not apply. She thus agreed with the lead opinion to the extent it held that the plaintiff could pursue her state law causes of action. (*Peatros, supra,* 22 Cal.4th at p. 180 (conc. & dis. opn. of Kennard, J.).) Justice Kennard said, however, that were plaintiff an officer, she would have found her claims fully preempted because "[t]he National Bank Act's preemptive effect on state law causes of action is absolute and unqualified; it completely preempts FEHA in all cases involving bank 'officers.' [Fn. omitted.]" (*Id.* at p. 183 (conc. & dis. opn. of Kennard, J.).)

### C. *The Dissenting Opinion in* Peatros

A three-justice dissent authored by Justice Brown concluded that section 24 fully preempts claims by bank officers for violations of FEHA. (*Peatros, supra,* 22 Cal.4th at p. 185 (dis. opn. of Brown, J.).) Justice Brown reasoned that a finding of full preemption "more fully accords with the underlying rationale for investing boards of directors with unfettered discretion to dismiss bank officers." (*Ibid.* (dis. opn. of Brown, J.).) Further, although Congress "may have chosen to qualify boards of directors' discretion by enacting Title VII and the ADEA," "[a]bsent a clear expression of such intent, amendment or repeal of one federal statute by another should not be read as an invitation to append analogous state laws to the national scheme." (*Id.* at p. 187 (dis. opn. of Brown, J.).) Finally, "[t]he value of uniformity underscores the second consideration supporting full preemption. A finding of partial preemption strikes at the essential nature of a national banking system, which depends upon 'uniform and universal operation throughout the entire territorial limits of the country . . . .' [Citation.] While the system might tolerate a certain measure of local diversity, 'it would militate much against its national character' if banks were subject to particular laws in one state but not in another." (*Id.* at pp. 187–188 (dis. opn. of Brown, J.).)

### IV. Peatros *Is Not Binding Precedent*

Plaintiff acknowledges that the lead opinion in *Peatros* is a plurality opinion, not a majority opinion, but he contends that it has been "accepted as precedent" by the California Supreme Court and appellate courts. He contends that it therefore should be considered "either binding precedent or at a

minimum persuasive authority." The Bank proposes a fundamentally different reading of *Peatros*: It suggests that Justice Kennard agreed with the dissent that section 24 completely preempts FEHA, and thus "four justices of this State's Supreme Court concluded that Section 24 preempts all state law causes of action—including those under the FEHA—brought by bank officers." This view, the Bank asserts, "has precedential force."

■ We do not agree with plaintiff that the lead opinion is binding precedent. " '[A]ny proposition or principle stated in an opinion [of the Supreme Court] is not to be taken as the opinion of the court, unless it is agreed to by at least four of the justices.' [Citations.]" (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 829 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; see also *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 918 [13 Cal.Rptr.2d 245, 838 P.2d 1198] [plurality opinion "lacks authority as precedent"]; *People v. Karis* (1988) 46 Cal.3d 612, 632 [250 Cal.Rptr. 659, 758 P.2d 1189] [opinion "is not binding precedent since a majority of the court did not join in the plurality opinion"].) In *Peatros*, Justice Kennard concurred in the result reached by the lead opinion, but she did not adopt its reasoning, and thus the lead opinion was not "agreed to by at least four of the justices." (*Adoption of Kelsey S., supra*, 1 Cal.4th at p. 829.) It therefore does not bind us.

For the same reason, we also do not agree with the Bank that the dissenting opinion has precedential force. Although Justice Kennard indicated that she *would* have found the plaintiff's claims to have been preempted had she found the plaintiff to be an officer, she did *not* so conclude because she determined that the plaintiff was *not* an officer. Justice Kennard's comments regarding preemption thus were not necessary to her decision and, accordingly, are dicta. As such, they do not bind us. (E.g., *Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 272 [82 Cal.Rptr.3d 629] [" 'Only statements necessary to the decision are binding precedents . . . .' [Citation.] 'The doctrine of precedent, or stare decisis, extends only to the ratio decidendi of a decision, not to supplementary or explanatory comments which might be included in an opinion.' "].)

V. *Federal Preemption Cases*

Having determined that none of the opinions in *Peatros* bind us, we must decide the extent to which section 24 preempts plaintiff's disability discrimination claims. We begin by reviewing the relevant federal case law.

A. *Federal Appellate Decisions*

1. *Fourth and Sixth Circuits*

In support of its contention that section 24 completely preempts the disability provisions of FEHA, the Bank cites decisions of the Fourth and Sixth Circuits that, it contends, have applied total field preemption of state statutory antidiscrimination claims. Two of the cases cited do not assist the Bank: *Andrews v. Federal Home Loan Bank of Atlanta* (4th Cir. 1993) 998 F.2d 214, 220, applies section 24 in the context of state wrongful termination claims, not statutory antidiscrimination claims; *Wiskotoni v. Michigan Nat. Bank-West* (6th Cir. 1983) 716 F.2d 378, 387, noted in dicta that section 24 "has consistently been construed by both federal and state courts as preempting state law governing employment relations between a national bank and its officers," but went on to hold that section 24 did not apply to the case before it because the plaintiff was not an "officer" within the meaning of the National Bank Act.

In the third case cited by the Bank, *Arrow v. Federal Reserve Bank of St. Louis* (6th Cir. 2004) 358 F.3d 392, 393, the Sixth Circuit relied on its earlier decision in *Ana Leon T. v. Federal Reserve Bank of Chicago* (6th Cir. 1987) 823 F.2d 928, 931, to hold that the dismissal "at pleasure" clause of the Federal Reserve Act, title 12 United States Code section 341, Fifth, preempts any "state-created employment right to the contrary." Neither *Arrow* nor *Ana Leon T.* provides any analysis to support this conclusion, however, and thus they provide us with limited guidance. (See *Ana Leon T. v. Federal Reserve Bank of Chicago, supra*, 823 F.2d at p. 931 ["[I]nasmuch as Leon was an employee of a Federal Reserve Bank, her rights under the Elliott-Larsen Act were preempted by federal law. Section 4, Fifth, of the Federal Reserve Act, 12 U.S.C. § 341, Fifth, specifically provides that employees of a Federal Reserve Bank may be dismissed 'at pleasure.' This provision preempts any state-created employment right to the contrary."]; *Arrow v. Federal Reserve Bank of St. Louis, supra*, 358 F.3d at p. 393 ["Our conclusion is controlled by our decision in *Ana Leon T. v. Federal Reserve Bank of Chicago* . . . ."].)

2. *Third Circuit*

Other federal courts have applied a "partial preemption" approach, holding that state antidiscrimination laws are not preempted if they "mirror" federal law. *Fasano v. Federal Reserve Bank of New York* (3d Cir. 2006) 457 F.3d 274 is illustrative. There, the plaintiff filed suit against the Federal Reserve Bank of New York, alleging that it failed to accommodate her disability in violation of the New Jersey Law Against Discrimination (LAD). (457 F.3d at p. 279.) The bank contended that the plaintiff's claim was preempted by section 341

of the Federal Reserve Act, which provides that a federal reserve bank shall have the power " 'to dismiss at pleasure' " officers and employees. (457 F.3d at pp. 283–284.) The Third Circuit held that state laws were not preempted to the extent that exactly paralleled federal law, but that section 341 (as amended by the ADA) "preempts *any* state employment law that goes beyond the remedies and protections provided by those federal laws." (457 F.3d at pp. 286–288.) Thus, because the LAD "provide[s] remedies and substantive protections that go far beyond their federal analogs," they "cannot be applied to Federal Reserve Banks due to conflict preemption." (457 F.3d at p. 290.)

In so concluding, the court declined to "pare back" the LAD "to exactly match the ADA." (*Fasano v. Federal Reserve Bank of New York, supra,* 457 F.3d at p. 290.) It explained: "We conclude that we would be ill-suited for the latter task. We agree with [other courts] that instead of attempting to 'essentially rewrite the relevant provisions of the [LAD] to parrot Federal anti-discrimination law,' and 'risk frustrating the intent of the publicly elected legislature which enacted the [LAD] in the first place,' dismissal is appropriate. [Citation.] There is simply no way to give full effect to such state laws while picking and choosing which parts of them may apply. For example, as noted above the LAD does not require exhaustion of administrative remedies; a plaintiff elects whether to proceed in the administrative arena, or in court, but a final decision in either forum is binding and renders the other forum unavailable. Were we to graft the ADA's exhaustion requirement onto the LAD, we would transform formerly final, binding administrative determinations into non-binding preliminaries to litigation. We will not step on the toes of the New Jersey legislature in this or any other like manner." (*Ibid.*; see also *Evans v. Federal Reserve Bank of Philadelphia* (E.D.Pa., July 8, 2004, No. Civ.A.03-4975) 2004 WL 1535772, p. *6 [appropriate response to preemption issue presented is "to dismiss Plaintiff's state law claims in their entirety": "The approach advocated by Justice Mosk in the *Peatros* decision, in which the relevant state anti-discrimination laws are only preempted to the extent that they actually conflict with federal anti-discrimination laws, would allow Plaintiff's state law causes of action to remain in the case, subject to the requirement that they be interpreted to provide the same level of protection as is available under Title VII. However, the Court declines to follow Justice Mosk's approach in this case, as it would require the Court to essentially rewrite the relevant provisions of the PHRA [(Pennsylvania Human Relations Act)] to parrot Federal anti-discrimination law. In so doing, the Court would risk frustrating the intent of the publicly elected legislature which enacted the PHRA in the first place."].)

### 3. *Ninth Circuit*

Other federal courts have applied a third approach, finding state laws preempted only to the extent that they exceed the strictures of federal

antidiscrimination law. *Kroske v. U.S. Bank Corp.* (9th Cir. 2005) 432 F.3d 976 (*Kroske*) illustrates this approach. There, a former bank branch manager sued the bank for which she had worked, alleging that her dismissal constituted age discrimination in violation of the Washington Law Against Discrimination (WLAD). The Ninth Circuit held that the federal ADEA impliedly repealed section 24 "to the extent necessary to give effect to the ADEA; accordingly, the authority to dismiss officers 'at pleasure' does not encompass the right to terminate an officer in a manner that violates the prohibitions against discrimination enumerated in the ADEA." (432 F.3d at p. 987.) Further, "parallel state anti-discrimination laws are explicitly made part of the enforcement scheme for the federal laws. [Citations.] Not only does the ADEA disclaim any preemptive effect on state laws, *see* 29 U.S.C. § 633(a), it also incorporates consistent state anti-discrimination laws to serve as the primary enforcement mechanism of the enumerated rights, *see id.* §§ 626(d)(2), 633(b). [¶] Indeed, the ADEA, like Title VII, provides that, in states with anti-discrimination laws that prohibit the conduct the complainant alleges, the state administrative agency has exclusive jurisdiction over a charge of discrimination for the first sixty days after the charge is filed." (*Id.* at p. 988.) Thus, "[i]n light of the ADEA's prohibition against age discrimination and the integral role of state anti-discrimination laws in the federal anti-discrimination scheme, we conclude that Congress did not intend for § 24(Fifth) to preempt the WLAD employment discrimination provisions, at least insofar as they are consistent with the prohibited grounds for termination under the ADEA." (*Id.* at p. 989.)

The court reached a similar result in *James v. Federal Reserve Bank of New York* (E.D.N.Y. 2007) 471 F.Supp.2d 226 (*James*). There, the plaintiff sued her former employer, the New York Federal Reserve Bank, under Title VII, the ADA, and the New York State Human Rights Law (NYSHRL). The bank moved to dismiss, contending that the plaintiff's claims were preempted by the "dismiss at pleasure" provision of the Federal Reserve Act, title 12 United States Code section 341, Fifth. After comprehensively reviewing the case law, the court concluded that the NYSHRL was preempted "only insofar as it exceeds the requirements of Title VII and the ADA." (*James, supra,* at p. 236.) It explained: "Where the question is one of implied preemption, the Supreme Court has called for restraint. State laws are to be found preempted only as far as is necessary to dispose of the instant case. [Citation.] As in *Shaw* [*v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 102 [77 L.Ed.2d 490, 103 S.Ct. 2890]], a risk exists here that 'wholesale' preemption will frustrate the intent of Congress to establish a joint federal/state system for enforcing anti-discrimination laws. 463 U.S. at 102. Although 'retail' preemption may present practical difficulties, these are mitigated by the familiarity of state employment agencies with the federal anti-discrimination laws. *Id.* at 106. The concern expressed in *Fasano* [*v. Federal Reserve Bank of New York,*

*supra*, 457 F.3d 274] and *Evans* [*v. Federal Reserve Bank of Philadelphia, supra*, 2004 WL 1535772]—that 'retail' preemption amounts to a judicial attempt to rewrite state law—appears unfounded. To the contrary, the 'retail' approach permits state employment law to be enforced to a greater extent than does the 'wholesale' approach recommended in those cases, which treats an entire state anti-discrimination scheme as a nullity where it deviates in any respect from federal law." (*James, supra*, 471 F.Supp.2d at p. 236; see also *Ewing v. Federal Home Loan Bank of Des Moines* (S.D. Iowa 2009) 645 F.Supp.2d 707, 720 (*Ewing*) ["Having reviewed the relevant case law and the arguments of the parties, the Court believes that the 'retail' approach advocated by *James* and the reasoning therein is most consistent with the law of conflict preemption. . . . Thus, state law is only preempted where it is in conflict with the 'dismiss at pleasure' provision as that provision has been amended by the ADEA and Title VII."].)

### B. *Shaw v. Delta Air Lines, Inc.*

We address finally the United States Supreme Court's analysis of a related preemption issue in the context of the federal Employee Retirement Income Security Act of 1974 (ERISA; 29 U.S.C. § 1001 et seq.). In *Shaw v. Delta Air Lines, Inc., supra*, 463 U.S. 85 (*Shaw*), the court considered whether ERISA—which expressly preempts " 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' " (463 U.S. at p. 91)—preempted a provision of the New York Human Rights Law (NYHRL) requiring employers to pay sick leave benefits to employees unable to work because of pregnancy. The court noted that at the time the suit arose, discrimination on the basis of pregnancy had been held not to constitute sex discrimination under Title VII. Nonetheless, the court said, state antidiscrimination laws "obviously play a significant role in the enforcement of Title VII," noting that Title VII expressly preserves nonconflicting state law. (463 U.S. at p. 101, quoting Title VII, § 708 [" 'Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title.' "].) Moreover, "Title VII requires recourse to available state administrative remedies. When an employment practice prohibited by Title VII is alleged to have occurred in a State or locality which prohibits the practice and has established an agency to enforce that prohibition, the Equal Employment Opportunity Commission (EEOC) refers the charges to the state agency. The EEOC may not actively process the charges 'before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated.' § 706(c), 86

Stat. 104, 42 U. S. C. § 2000e-5(c); see *Love v. Pullman Co.*, 404 U.S. 522 [30 L.Ed.2d 679, 92 S.Ct. 616] (1972)." (*Shaw, supra*, 463 U.S. at pp. 101–102.)

The court held that ERISA preempts the NYHRL "only insofar as it prohibits practices that are lawful under federal law." (*Shaw, supra*, 463 U.S. at p. 108.) It explained: "Given the importance of state fair employment laws to the federal enforcement scheme, pre-emption of the Human Rights Law would impair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands. . . . If ERISA were interpreted to pre-empt the Human Rights Law entirely with respect to covered benefit plans, the State no longer could prohibit the challenged employment practice and the state agency no longer would be authorized to grant relief. The EEOC thus would be unable to refer the claim to the state agency. This would frustrate the goal of encouraging joint state/federal enforcement of Title VII . . . ." (*Id.* at p. 102.) However, "[i]nsofar as state laws prohibit employment practices that are lawful under Title VII, . . . pre-emption would not impair Title VII within the meaning of § 514(d). Although Title VII does not itself prevent States from extending their nondiscrimination laws to areas not covered by Title VII, see § 708, 78 Stat. 262, 42 U. S. C. § 2000e-7, it in no way depends on such extensions for its enforcement. Title VII would prohibit precisely the same employment practices, and be enforced in precisely the same manner, even if no State made additional employment practices unlawful. Quite simply, Title VII is neutral on the subject of all employment practices it does not prohibit. [Fn. omitted.]" (*Id.* at p. 103.)

The court recognized that its interpretation of ERISA "as requiring partial pre-emption of state fair employment laws may cause certain practical problems. Courts and state agencies, rather than considering whether employment practices are unlawful under a broad state law, will have to determine whether they are prohibited by Title VII." (*Shaw, supra*, 463 U.S. at pp. 105–106.) It concluded, however, that "state agencies and courts are sufficiently familiar with Title VII to apply it in their adjudicative processes." (*Id.* at p. 106.)

VI. *To the Extent FEHA Is Not Inconsistent with Section 24 as Impliedly Amended by the ADA, It Is Not Preempted*

Having considered the above authorities, we adopt the approach of the lead opinion in *Peatros* and of the federal courts in *Kroske, James*, and *Ewing*. Under that approach, we conclude that, to the extent FEHA is not inconsistent with section 24 as impliedly amended by the ADA, it is not preempted.

█ Congress's purpose in enacting the ADA was severalfold: "(1) to provide a clear and comprehensive national mandate for the elimination of

discrimination against individuals with disabilities; [¶] (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; [¶] (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and [¶] (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." (42 U.S.C. § 12101(b).) In furtherance of these congressional goals, the ADA applies to *all* employers of 15 or more employees, with the sole exception of the United States, a corporation wholly owned by the United States, or an Indian tribe. (42 U.S.C. § 12111(5).) There is no exception in the ADA for banks, including national banks.

The antidiscrimination provisions of the ADA plainly conflict with a bank's authority under section 24 to dismiss officers "at pleasure." As a result, we follow the approach of the lead opinion in *Peatros* to conclude that the dismiss-at-pleasure provision of section 24 is repealed by implication to the extent necessary to give effect to the ADA. Stated simply, the authority granted national banks under section 24 to dismiss officers "at pleasure" does not encompass the right to terminate officers in a manner that violates the prohibitions against disability discrimination enumerated in the ADA. (See *Peatros, supra*, 22 Cal.4th at pp. 168–169.)

■ We further agree with the lead opinion in *Peatros*, as well as with *Kroske, James*, and *Ewing*, that state antidiscrimination laws are preempted only to the extent that they exceed the requirements of the ADA. Like Title VII, the ADA "contemplates that state laws will contribute to the overall federal enforcement regime." (*Tompkins v. United Healthcare of New England, Inc.* (1st Cir. 2000) 203 F.3d 90, 96.) For example, title 42 United States Code section 12201(b) provides that nothing in the ADA "shall be construed to invalidate or limit the remedies, rights, and procedures of any . . . law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act." Further, the ADA provides that claimants have an additional 120 days to file administrative claims with the EEOC (Equal Employment Opportunity Commission) if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." (42 U.S.C. § 2000e-5(e)(1); see *id.*, § 12117(a).) And, the EEOC has certified the DFEH as the agency whose findings and resolutions it shall accept in regard to cases processed by it. (29 C.F.R. §§ 1601.75, 1601.80 (2010).) Thus, as the United States Supreme Court noted in *Shaw, supra*, 463 U.S. at page 102, given the importance of state fair employment laws to the federal enforcement scheme, "pre-emption

of [FEHA] would impair [the ADA] to the extent that [FEHA] provides a means of enforcing [the ADA's] commands."

Finally, we agree with the district courts in *James* and *Ewing* that the concern expressed by some courts—that partial preemption of federal law amounts to a judicial rewriting of state law—is unfounded. To the contrary, we agree with those courts that the partial preemption approach "permits state employment law to be enforced to a greater extent than does the [complete preemption] approach . . . , which treats an entire state anti-discrimination scheme as a nullity where it deviates in any respect from federal law." (*James, supra*, 471 F.Supp.2d at p. 236.)

Accordingly, we conclude that FEHA is impliedly preempted only where it conflicts with the "dismiss at pleasure" provision of section 24, as that provision has been amended by the ADA.

VII. *FEHA's Statute of Limitations Is Not Preempted by Section 24 as Amended by the ADA*

■ The Bank contends that even if section 24 does not completely preempt FEHA, it preempts those provisions of FEHA that conflict with section 24 as impliedly amended by the ADA. As relevant here, the Bank urges that section 24 (as amended) preempts those provisions of FEHA that provide plaintiffs a longer time to file than is permitted under the ADA. For the reasons that follow, we disagree.

■ Under FEHA, an administrative complaint must be filed with the DFEH within one year of the date of the alleged discriminatory action. (Gov. Code, § 12960, subd. (d).) If the DFEH decides not to pursue the matter, it must issue a right-to-sue letter no later than a year after the complaint is filed. (*Id.*, § 12965, subd. (b).) The complainant then has one year from the date of that letter to file a civil action. (*Id.*, § 12965, subd. (d)(2); see *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 671, fn. 1 [108 Cal.Rptr.3d 171, 229 P.3d 83].)

■ Under the ADA, a complainant must file an administrative complaint with the EEOC within 180 days of the alleged discriminatory action, or within 300 days of such action if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . ." (42 U.S.C. § 2000e-5(e)(1).) A civil action on an ADA claim must be filed within 90 days after the EEOC issues a right-to-sue letter. (42 U.S.C. §§ 2000e-5(f)(1), 12117.)

The Bank contends that the statute of limitations under FEHA is preempted by the shorter statute of limitations under the ADA. Further, it contends that

because plaintiff did not file his administrative complaint within 300 days of the alleged discriminatory actions, or file his complaint within 90 days of receiving a right-to-sue letter, his entire action is time-barred.

■ We conclude that requiring a FEHA plaintiff to comply with the statute of limitations imposed by the ADA is not necessary to satisfy Congress's intent as expressed in section 24. In enacting the National Bank Act (NBA), Congress intended to "create a national banking system with 'uniform and universal operation through the entire territorial limits of the country.' " (*Kroske, supra*, 432 F.3d at p. 989.) "Diverse and duplicative superintendence of national banks' engagement in the business of banking, we observed over a century ago, is precisely what the NBA was designed to prevent: 'Th[e] legislation has in view the erection of a system extending throughout the country, and independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the States.' [Citation.] . . . '. . . [C]onfusion would necessarily result from control possessed and exercised by two independent authorities.' " (*Watters v. Wachovia Bank, N. A.* (2007) 550 U.S. 1, 13–14 [167 L.Ed.2d 389, 127 S.Ct. 1559].) However, while the NBA shields national banking from unduly burdensome and duplicative state regulation, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." (*Watters*, at p. 11.) Indeed, states are permitted even to regulate the activities of national banks "where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." (*Id.* at p. 12.)

Permitting states to impose different statutes of limitations than would be imposed under comparable federal antidiscrimination law in no way subjects national banks to "diverse and duplicative superintendence" or imposes "limitations and restrictions as various and as numerous as the States." While permitting states to impose varying antidiscrimination laws on national banks arguably subjects them to "diverse and duplicative" hiring and firing requirements and limitations, statutes of limitations of claims brought against banks have no substantive regulatory effects on the banks. While these statutes of limitations regulate when *plaintiffs* must file regulatory and civil claims, they in no way regulate the banking *defendants*.

Moreover, the statute of limitations applicable under the federal ADA already expressly varies by state. Pursuant to title 42 United States Code section 2000e-5(e), an administrative complaint must be filed within 180 days after the alleged unlawful employment practice *unless* the state or local agency has created an "agency with authority to grant or seek relief from

such practice" and the claimant "has initially instituted proceedings with" that agency. If the claimant has filed a claim with such a state agency, an administrative claim may be filed up to *300 days* after the alleged unlawful employment practice occurred. (*Ibid.*; see also 42 U.S.C. § 12117.) Thus, the federal law itself contemplates that filing deadlines will vary by state.

*Lambright v. Federal Home Loan Bank of San Francisco* (N.D.Cal., Dec. 3, 2007, No. C 07 4340 CW) 2007 WL 4259552, the sole case the Bank cites in support of its statute of limitations claim, does not suggest a different result. There, a bank employee sued his former employer for racial discrimination and harassment under Title VII and FEHA; the bank moved to dismiss the state law claims on the grounds that they were preempted by the "dismiss at pleasure" provision of the Federal Home Loan Bank Act. (2007 WL 4259552 at pp. *2–*3.) In support, the bank noted, among other things, that FEHA had a longer statute of limitations than Title VII. The district court denied the bank's motion to dismiss, noting that while FEHA had a longer statute of limitations than Title VII, the plaintiff had brought his claims within Title VII's statute of limitations. (2007 WL 4259552 at p. *5.)

■ The Bank urges that *Lambright* supports its position because "[b]y implication, had the plaintiff delayed beyond the federal limitations period, such suit would not have been permitted to proceed." We do not agree. " '[I]t is axiomatic that cases are not authority for propositions not considered.' (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].)" (*Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, 694, fn. 14 [121 Cal.Rptr.3d 58, 247 P.3d 130].) Because in *Lambright* the plaintiff's claim was filed within the federal statute of limitations, the court was never called upon to consider—and did not in fact consider—whether it would have been timely under other circumstances.

■ For all of these reasons, we conclude that section 24, as impliedly amended by the ADA, does not preempt FEHA's statute of limitations.

VIII. *Plaintiff Concedes That the Claims Against His Supervisor Are Preempted*

■ We reach a different result with regard to plaintiff's claims against defendant Brander. On appeal, plaintiff does not contend that his claims against Brander were improperly dismissed; to the contrary, he concedes that the ADA does not permit individual claims against supervisors.[3] (E.g., *Albra v.*

---

[3] At oral argument, plaintiff recognized that FEHA allows claims against individuals and the ADA does not. He reiterated the point made in his briefs that the differences in the two statutory schemes do not mean that FEHA was preempted. However, he acknowledged that the court's dismissal of his claim against Brander was proper.

*Advan, Inc.* (11th Cir. 2007) 490 F.3d 826, 830 ["individual liability is precluded for violations of the ADA's employment discrimination provision"]; *Walsh v. Nevada Dept. of Human Resources* (9th Cir. 2006) 471 F.3d 1033, 1038 ["The district court was correct when it held that individual defendants cannot be held personally liable for violations of the ADA."].) Accordingly, plaintiff has forfeited any claim that his causes of action against Brander should be reinstated. (E.g., *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [57 Cal.Rptr.3d 363] ["It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

## DISPOSITION

The summary judgment for the Bank is reversed. The trial court is directed to vacate its order granting summary judgment for the Bank and to enter a new and different order granting the Bank summary adjudication of the second and fourth causes of action, but denying the Bank summary adjudication of the first and third causes of action. The summary judgment for Brander is affirmed. Each party shall bear its own costs on appeal.

Epstein, P. J., and Manella, J. concurred.

Respondents' petition for review by the Supreme Court was denied September 21, 2011, S194866. Werdegar, J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.