Filed 11/7/14  Stern v. Bank of America CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KENNETH M. STERN, as Personal Representative, etc., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br>     Defendants and Respondents. | B254751 <br><br> (Los Angeles County <br> Super. Ct. No. PC055008) |

    APPEAL from a judgment of the Superior Court of Los Angeles County. Melvin D. Sandvig, Judge.  Affirmed.

    Law Offices Kenneth M. Stern, Kenneth M. Stern, in pro. per., for Plaintiff and Appellant.

    Severson & Werson, Jan T. Chilton, Erik Kemp for Defendants and Respondents.

_____

The son of a disabled woman tried to open a bank account for his mother, using a power of attorney. Two banks rebuffed his efforts, citing policies requiring customers to be physically present when opening a new account at their offices, to comply with federal regulations regarding customer identification. The trial court, in turn, rebuffed the ensuing lawsuit alleging violations of the Unruh Civil Rights Act (the Unruh Act) and the Probate Code, dismissing the case on demurrer. We affirm.

## FACTS

In 2011, Kenneth Stern went to a Bank of America branch office to open a new account for his mother, Thelma Stern, an invalid in her nineties with Alzheimer's Disease who used a wheelchair. The pleading alleges that "because of her disabilities it was not convenient to bring plaintiff to the bank." Kenneth Stern attempted to open the account using a power of attorney from his mother and her California Identification Card from the DMV. Although Mrs. Stern had an existing account, the bank refused to open a new account unless she came in personally.

Kenneth Stern also went to a Wells Fargo Bank branch office. He explained Mrs. Stern's health condition to a representative, and tried to open an account, using the power of attorney and the state identification card. Although Mrs. Stern had an existing account at Wells Fargo, the bank refused to open a new account unless she came in.

Kenneth Stern filed suit against Bank of America and Wells Fargo on behalf of his mother. The amended complaint asserts violations of the Unruh Act and the Probate Code. The banks demurred, arguing that the pleading does not state facts sufficient to constitute a cause of action.

The trial court sustained the demurrer without leave to amend. It found that state governments cannot dictate requirements to national banks for opening accounts: the banks must be allowed to operate in a way that prevents fraud or illegal conduct. The Sterns allege no facts showing that they were denied an account because Mrs. Stern was elderly or disabled. The banks were willing to open an account if Mrs. Stern was physically present, or she could have done so by telephone or online. Even if Mrs. Stern's claims are not preempted by federal law, the banks' requirement of physical

2

presence bears a reasonable relation to customer identification programs intended to guard against fraud and identity theft.

The court entered a signed judgment of dismissal in favor of the banks on December 18, 2013. It denied a motion for a new trial in February 2014. Appeal is taken from the orders dismissing the case and denying a new trial.[1]

## DISCUSSION

### 1. Ruling on Demurrers

Appeal lies from the judgment of dismissal after demurrers are sustained without leave to amend. (Code Civ. Proc., §§ 581d, 904.1, subd. (a)(1); *Serra Canyon Co. v. California Coastal Com.* (2004) 120 Cal.App.4th 663, 667; *Tanen v. Southwest Airlines Co.* (2010) 187 Cal.App.4th 1156, 1162.) We review de novo the ruling on the demurrers, exercising our independent judgment to determine whether a cause of action has been stated. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We assume that the pleading's material allegations are true. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

#### a. *Unruh Act Claim*

The Unruh Act entitles everyone to full and equal services in business establishments, regardless of physical or mental disability or medical condition. (Civ. Code, § 51, subd. (b), (e)(1).) It provides substantive protection against invidious discrimination in public accommodations. Remedies for violations of the Unruh Act include a private action for damages. (Civ. Code, § 52; *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 667.)

The Unruh Act "forbids a business establishment generally open to the public from arbitrarily excluding a prospective customer." (*In re Cox* (1970) 3 Cal.3d 205, 217; *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167 [Unruh Act "imposes a compulsory duty upon business establishments to serve all persons without arbitrary

---

[1]     Mrs. Stern died after judgment was entered. Kenneth Stern is her personal representative and successor-in-interest in this litigation. He is a lawyer.

3

discrimination"].)  By the same token, a business can "impose upon patrons reasonable regulations rationally related to the services performed."  (*In re Cox*, *supra*, 3 Cal.3d at p. 217, fn. 13.)  This issue may be decided on demurrer "when the policy or practice of a business establishment is valid on its face because it bears a reasonable relation to commercial objectives appropriate to an enterprise serving the public."  (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165.)

The determination of a reasonable commercial objective should not "involve the courts of this state in a multitude of microeconomic decisions that we are ill equipped to make."  (*Harris v. Capital Growth Investors XIV*, *supra*, 52 Cal.3d at p. 1166.)  Many businesses, including banks, have policies to determine which customers to deal with and on what terms.  These businesses need not have to defend their policies against legal challenges that they acted arbitrarily in refusing to transact business, so long as their policy is "neutral" with respect to customers' race, sex, religion or other personal characteristic protected by the Unruh Act.  (*Harris*, at pp. 1167-1168.)  A commercial policy may have a disparate impact on one group without giving rise to a claim:  the Unruh Act only covers "*intentional* acts of discrimination, not disparate impact."  (*Harris*, at p. 1172.)

A bank does not engage in unreasonable, arbitrary, or invidious discrimination based on a protected personal characteristic merely because it requires suitable identification from people who wish to open accounts.  The plaintiffs in *Howe v. Bank of America N.A.* (2009) 179 Cal.App.4th 1443 contended that they were harmed, in violation of the Unruh Act, because Bank of America favored foreigners over Americans by allowing noncitizens to open accounts without providing Social Security numbers.  (*Howe*, at p. 1447.)  In affirming the dismissal of the lawsuit on demurrer, the Court of Appeal noted that federal law requires that banks obtain Social Security numbers from U.S. citizens, while allowing alternative identification for foreigners.  Though the bank could impose a higher identification requirement on foreigners than the minimum requirements imposed by federal law, it did not act arbitrarily by applying the minimum

4

standards:  the practice bore a reasonable relationship to the bank's commercial objectives and was valid on its face, as a matter of law.  (*Id.* at pp. 1452-1454.)

Federal law requires a bank to adopt procedures that will enable it "to form a reasonable belief that it knows the true identity of each customer," which may be accomplished if the customer appears with a government-issued identification bearing a photograph.  (31 C.F.R. § 1020.220.)   The banks' policy of checking identification complies with the mandate to verify the "true identity" of their customers.  The policy is neutral with respect to the personal characteristics listed in the Unruh Act:  it applies to everyone, regardless of race, sex, color, religion, ancestry, national original, disability, medical condition, marital status, or sexual orientation.  (Civ. Code, § 51, subd. (b).)   Requiring customers to present photo identification depicting themselves is a reasonable and prudent means of preventing fraud and identity theft.

The Unruh Act does not permit plaintiff to argue that the banks' policies have a negative effect on the disabled:  the policy is valid so long as it does not intentionally, arbitrarily and invidiously exclude disabled people from bank services.  Plaintiff does not allege that the banks intentionally and categorically refuse to open accounts for disabled people.  On the contrary, the pleading states that the banks were willing to open an account for Mrs. Stern if she were present.  Plaintiff cannot rely on the effect of a facially neutral policy on a particular group to infer discriminatory intent.  (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 854.)

As pleaded, plaintiff's Unruh Act claim fails because it does not demonstrate that defendants had an invidious discriminatory intent.  Rather, the complaint shows a facially neutral and reasonable business policy that is consistent with federal regulations requiring adequate customer identification.  Plaintiff has at best alleged that the banks' facially neutral policy has a disparate impact on her, which is not a cognizable claim.

The complaint does not reference the Americans with Disabilities Act (ADA).  (42 U.S.C. § 12101 et seq.)  Plaintiff argued the applicability of the ADA in the trial court and continues to do so on appeal.  The opening brief states that the complaint can be amended to allege an ADA violation.

5

The Unruh Act is violated if individual rights are abridged under the ADA. (Civ. Code, § 51, subd. (f).) The Unruh Act comprehensively incorporates ADA accessibility standards. (*Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at p. 673.) While the ADA itself does not allow a private action by a disabled individual denied access to public accommodations, "by incorporating the ADA into the Unruh Civil Rights Act, California's own civil rights law covering public accommodations, which does provide for such a private damages action, the Legislature has afforded this remedy to persons injured by a violation of the ADA." (*Munson*, at p. 673.) "A plaintiff who establishes a violation of the ADA [ ] need not prove intentional discrimination in order to obtain damages." (*Id.* at p. 665.)

Banks are not exempted from the ADA. (*Quinn v. U.S. Bank NA* (2011) 196 Cal.App.4th 168, 186.) To establish an ADA violation, plaintiff must show (1) a disability; (2) defendant owns or operates a public accommodation; and (3) "plaintiff was denied public accommodations by the defendant because of his disability." (*Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.* (9th Cir. 2010) 603 F.3d 666, 670.) The only issue here is the third element.

Plaintiff argues that businesses must provide reasonable modifications for disabled persons. (42 U.S.C. § 12182, (b)(2)(A)(ii).) The opening brief cites cases in which disabled persons were not properly accommodated while visiting a business: *PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661 (requiring a disabled golfer to be allowed to use a golf cart because he could not walk the course); *Fortyune v. American Multi-Cinema, Inc.* (9th Cir. 2004) 364 F.3d 1075 (cinema had to arrange for a disabled patron to be able to sit with his wife at a wheelchair-accessible seat); *Lentini v. California Center for the Arts* (9th Cir. 2004) 370 F.3d 837 (disabled patron had to be allowed to bring a service animal to a theatre).

The pleading establishes that Mrs. Stern was not physically present at defendant banks' offices. She was not turned away because of her disability, or denied service because defendants failed to provide access ramps or entry to their facilities. Instead, her claim is that defendants must provide different—and less secure—personal identification

6

procedures for her than for all other customers. A "public accommodation" under the ADA is a *place*, not a type of service. (*Ford v. Schering-Plough Corp.* (3d Cir. 1998) 145 F.3d 601, 612-613; *Belton v. Comcast Cable Holdings, LLC* (2007) 151 Cal.App.4th 1224, 1238-1239 [cable company need not provide different options to a blind patron because television is a service, not a place].) The ADA "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." (*Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104, 1115.)

The opening brief shows that defendants' policies accommodate the needs of disabled people. If allowed to amend, Kenneth Stern would allege that an account "could be opened on the internet or by telephone," a possibility that did not occur to him, or he was unaware of, at the time he sought to open an account for his mother. Defendants agree that accounts can be opened without physical presence at a branch office, by telephone or by computer. There is no factual dispute, given the parties' agreement. Because Mrs. Stern—through her attorney-in-fact—could open a new account without going personally to a branch office, this is a reasonable accommodation giving access to services despite her disability, as a matter of law.

### b. *Probate Code Violations*

The complaint alleges violation of a Probate Code provision requiring third persons to accord an attorney-in-fact acting pursuant to a power of attorney the same rights and privileges that would be accorded a principal if the principal were personally present. (Prob. Code, § 4300.) Another section states that a bank is not required to honor a power of attorney if the principal is not currently a depositor of the bank. (Prob. Code, § 4310.)

The complaint seeks only injunctive relief for alleged violations of the Probate Code. It reads, "Plaintiff is entitled to an injunctive order prohibiting defendants . . . from refusing to honor said power of attorney." As defendants observe, the request for an injunction is moot: Mrs. Stern is deceased, so she cannot be granted an injunction obliging the banks to open a new account for her. Kenneth Stern asks this court to decide the issue, even if it is moot, because it is a matter of general public interest. He also

states that he could amend the pleading to allege monetary damages (loss of interest income) and the cost of attorney fees, instead of seeking injunctive relief. Even if the pleading were amended, it would fail.

The statute plaintiff relies upon states that "a third person is not required to honor the attorney-in-fact's authority or conduct business with the attorney-in-fact if the principal cannot require the third person to act or conduct business in the same circumstances." (Prob. Code, § 4300.) Bank accounts are contractual relationships. (*Bank of America Assn. v. California Bk.* (1933) 218 Cal. 261, 273-274; *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 813 ["breach of a deposit contract" between bank and depositor].) Banks are not required to contract with anyone who walks in and demands an account. Mrs. Stern could not compel the banks to do business with her and so, by extension, Kenneth Stern could not do so either.

In any event, the banks have a complete defense. They may refuse to accept a power of attorney if "authorized or required by state or federal statute or regulation." (Prob. Code, § 4406, subd. (c).) Federal regulations require banks to adopt procedures to ensure the true identity of customers. Defendants' policy of checking identification when opening an account at a branch office is in furtherance of the federal mandate to prevent fraud, identity theft, or money-laundering. (31 C.F.R. § 1020.220.)

## 2. **Denial of Motion for New Trial**

A motion for new trial may be brought when the court sustains a demurrer or grants judgment on the pleadings. (*Carney v. Simmonds* (1957) 49 Cal.2d 84, 90-91.) The opening brief lists three grounds for a new trial: irregularity in the proceedings or abuse of discretion that prevented a fair trial; insufficient evidence to justify the decision; or error in law. (Code Civ. Proc., § 657, causes 1, 6, 7.) The trial court's ruling on a motion for new trial will not be disturbed unless there was an abuse of discretion, considering the entire record. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859; *ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 832.)

In a one-paragraph argument, Kenneth Stern contends that a new trial should have been granted "[f]or the reasons chronicled herein." The contention is, in short, a rehash

8

of the arguments he made in opposition to the demurrers.  We have addressed his points in the preceding section and found them lacking.  The trial court did not abuse its discretion by denying a new trial.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.


9