Filed 5/6/14  Villareal v. ExxonMobil CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RENATO VILLAREAL, | B245662 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC462117) |
| EXXONMOBIL CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Richard L. Fruin, Judge.  Affirmed.

The Mathews Law Group, Charles T. Mathews, George S. Azadian, Zack I. Domb, Jeffrey S. Nakao and Devin E. Rauchwerger for Plaintiff and Appellant.

Alston & Bird, Martha S. Doty and Sayaka Karitani for Defendant and Respondent.

_____

Renato Villareal appeals from the trial court's summary judgment dismissing his complaint for age, national origin/race, and disability discrimination against his former employer, ExxonMobil Corporation, doing business as ExxonMobil Refining and Supply (Exxon). Because we find no triable issue sufficient to support a jury verdict in his favor, we affirm.

## FACTS AND PROCEEDINGS

Appellant Renato Villareal was a 56-year-old Filipino with a Bachelor of Science degree in Chemical Engineering from the Philippines who emigrated to the United States in 1977. In the United States, he has taken graduate courses in engineering at several universities and has been employed as an engineer since 1977. Throughout his four-decade career, he has received praise for his hard work, skill, and diligence.

In 2007, appellant was working as a project manager for a contractor at the Torrance oil refinery of respondent Exxon. In February 2007, Exxon hired appellant away from the contractor and made him a project manager in Exxon's Capital Projects Improvement Department. During his first two years as an Exxon employee, appellant claims he excelled (although the record strongly suggests otherwise) at important engineering projects, which he completed on time and under budget. For his excellent work, he received two pay increases between February 2007 and April 2009.

Exxon measures employee performance using a merit ranking system that annually compares each employee with similarly situated employees. The review cycle begins on April 1 and looks back at the employee's performance during the previous 12 months. After Exxon's bureaucracy vets the reviews, each employee's supervisor tells the employee his ranking in an annual meeting at the end of the calendar year in November or December. In April 2008 after appellant had completed his first full year at Exxon, his supervisor, Joe Carson, ranked him in the bottom third of his review group for the 2007-2008 review cycle. And in his review for the next cycle covering 2008-2009, Carson ranked appellant in the bottom 10 percent of employees. Appellant describes

Carson as a "fair supervisor" and acknowledges that Carson did not discriminate against him.

In April 2009, Buddy Myers became appellant's supervisor.[1] Myers is Caucasian and about 25 years younger than appellant, who was the oldest, and only Filipino, of the six engineers Myers supervised. Because Myers was appellant's supervisor in November 2009 when appellant was informed that supervisor Carson had ranked him in the bottom 10 percent for 2008-2009, Myers signed appellant's 2008-2009 performance review. Despite signing the performance review, Myers was not responsible for appellant's ranking because he did not become appellant's supervisor until April 2009 by which time the 2008-2009 review cycle had ended. Appellant testified in his deposition: "Q. [I]t was your understanding that Mr. Myers had not been involved in the ranking process for you in 2009; isn't that right? [¶] A. That's true. That's correct. [¶] Q. . . . Joe Carson was the supervisor who was involved in the ranking process where you were ranked in 2009, correct? [¶] A. Correct. Yes."[2]

In 2009, Exxon implemented use of "Performance Improvement Plans" (PIP's). The purpose of PIP's was to improve the performance of Exxon's departments by identifying and keeping high-performing employees and either improving, or terminating, low-performing employees. Exxon placed into PIP's those employees who ranked in the bottom 10 percent of their review group, with the goal of improving their ranking within a set time while managing the turnover of employees who did not improve. In November 2009, Exxon placed appellant on a six-month PIP.

---

[1]    Appellant alleged a cause of action for intentional infliction of emotional distress against Myers that appellant has not pursued on appeal. Thus, although Myers was a defendant below, he is not a party to this appeal.

[2]    Appellant asserts Carson disavowed the 10 percent ranking, purportedly telling appellant that the ranking was wrong, but appellant's only support is appellant's deposition testimony about what Carson purportedly told him, which is hearsay. A triable issue requires admissible evidence, but appellant does not offer any direct testimony or evidence from Carson in which Carson disavows the 10 percent ranking. (Code Civ. Proc., § 437c, subd. (d).)

In January 2010 two months after placement in his PIP, appellant began to suffer from depression and related physical symptoms which he attributed to supervisor Myers's scrutiny, harassment, and discrimination against him. We discuss the particulars of appellant's allegations against Myers in greater detail in *Discussion*, post. In April 2010, Myers told appellant that he remained ranked in the bottom 10 percent of his review group and was likely to be fired unless he substantially improved his ranking in the next six months. Around this time in March or April 2010, appellant informed Exxon of his depression and related physical symptoms, and in April 2010 requested a transfer to a supervisor other than Myers. Exxon denied appellant's request. On May 24, 2010, appellant complained in writing to Exxon's human resources department that he believed his poor reviews and placement on a PIP arose from his being a "victim of blatant age discrimination and harassment because of salary and work classification level."[3]

In June 2010, appellant took six months' voluntary paid medical leave through November. In November, Exxon promised appellant he would have a different supervisor upon his return to work. In November, appellant's psychologist concluded appellant was ready to resume working, but Exxon's medical department refused to let him return to work because he was hypertensive, had an abnormally fast heart rate, was "emotional (subject to crying)," and did not have a required fitness-for-duty certificate from his doctor. One week later, appellant revisited Exxon's medical department, which again refused to permit him to return to work without a fitness-for-duty certificate. A nurse in the medical department told appellant he should resign immediately if he wanted to keep his health benefits.[4] Alleging Exxon had constructively terminated him, appellant resigned on December 27, 2010.

---

[3] Exxon investigated appellant's discrimination claim. Exxon concluded Myers had not discriminated against appellant, but the investigators recommended that Myers should receive coaching on how to improve his communication skills with those he supervised.

[4] Neither party develops this point or explains the connection, if any, between resigning and keeping health benefits.

In May 2011, appellant filed his complaint. He alleged causes of action for discrimination in violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.( FEHA)); failure to reasonably accommodate his disability; failure to engage in an interactive process; national origin/race discrimination; age discrimination; and wrongful termination in violation of public policy.[5]

Exxon moved for summary judgment or adjudication. It asserted it was undisputed that Exxon had let appellant take medical leave and had not fired or demoted him, and that appellant admitted to having no evidence of discrimination other than his speculation that he received low job performance ratings because of his age, race, or disability. The court granted summary judgment for Exxon (and supervisor Myers). This appeal followed.

## STANDARD OF REVIEW

" 'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. [Citations.] The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action. . . ." [Citation.]' [Citation.]" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

---

[5] Appellant also alleged a cause of action for failure to prevent discrimination. Because one cannot prevent that which did not occur, our affirmance of the trial court's finding of no triable issue of discrimination means we need not address appellant's cause of action for failure to prevent discrimination.

## DISCUSSION

1. *No Triable Issue for Failure to Accommodate Disability*

Appellant asserts he was disabled by depression and related physical symptoms. As appellant's employer, Exxon was obligated to make reasonable accommodations for appellant's disabilities. (*Nadaf-Rahrov, Inc. v. Neiman Marcus Group* (2008) 166 Cal.App.4th 952, 977; see also Gov. Code, § 12940, subd. (m).) The trial court found Exxon reasonably accommodated appellant by permitting him to take family medical leave from June 2010 until November 2010. But appellant contends Exxon failed to accommodate his disability when it rejected his request before he went on medical leave to transfer him to a different supervisor.

Appellant offers no authority that transferring an employee to a different supervisor is the type of accommodation contemplated by laws protecting the disabled. Disability is an impairment of a major life activity. (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 311; see also Gov. Code, § 12926, subds. (j) & (m).) The inability to work with one particular supervisor is not a disability if one can work with another supervisor where the ability to work turns on the other supervisor merely being less rude, demanding, or overbearing. (*Weiler v. Household Finance Corp.* (7th Cir. 1996) 101 F.3d 519, 524 [employee not disabled if "only unable to work if [undesired supervisor] is her boss" whose negative assessments of employee's performance make her anxious and stressed].) If an employee can do the same job for another supervisor, the employee can do the job and is therefore not disabled. (*Id.*) In any event, Exxon told appellant in November 2010 before he returned to work from his medical leave that Exxon had assigned supervisor Myers to a different department and appellant would be getting a new supervisor when appellant resumed work. Accordingly, no triable issue exists regarding Exxon's accommodation of appellant's claimed disability.

6

2.      *No Triable Issue of Failure to Engage in Interactive Process*

As appellant's employer, Exxon was obligated to engage in a timely, good faith interactive process to find a reasonable accommodation for appellant's disability. (Gov. Code, § 12940, subd. (n).) The " 'interactive process is a mandatory rather than a permissive obligation on the part of employers . . . and this obligation is triggered by an employee . . . giving notice of the employee's disability and the desire for accommodation.' [Citation.]" (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 261.)

Exxon agreed to appellant's request for medical leave, and informed appellant he could return to work upon presentation of a fitness-for-duty certificate from his doctor. Appellant does not allege that he presented a certificate. Instead, he asserts he was not told he needed to provide a medical release to return to work. The record defeats his assertion, however, because he admitted in his deposition to receiving while he was on medical leave a certified letter informing him he needed to present such a certificate in order to return to work. The letter stated: "[Y]ou will be required to present a fitness-for-duty certificate prior to being restored to employment. If such certification is not received, your return to work will be delayed until such certification is provided." The trial court concluded it was undisputed that Exxon engaged in the interactive process and appellant caused a breakdown in the process by, for reasons not disclosed in the record, not submitting a fitness-for-duty certificate. Because appellant does not answer the undisputed evidence showing that he failed his duty to present a fitness-for-duty certificate, no triable issue exists regarding Exxon's engagement in an interactive process.

3.      *No Triable Issue of Wrongful Termination in Violation of Public Policy*

It is illegal for an employer to retaliate against an employee who exercises his rights under FEHA's guarantee of freedom from employment discrimination. (Gov. Code, § 12940, subd. (h); CACI No. 2430.) In March or April 2010, appellant

7

complained to Exxon management that Myers was harassing him. Appellant testified in his deposition as follows: "Q. In April or March of 2010, you asked [Myers's superior] to transfer you to another department; is that right? [¶] A. Yes. [¶] . . . [¶] Q. And what did you say when you requested the transfer? [¶] A. I've been harassed and given a hard time by Mr. Myers and since Myers has been talking about my performance, I . . . I should be moved to another group to – to be more productive. That's the gist of the conversation. [¶] Q. Can you recall anything else you said to [Myers's superior] in that conversation about Mr. Myers? [¶] A. Was I being harassed by Mr. Myers? That's all that I can recall about that conversation. [¶] Q. Did you tell him that you believed that the harassment was because of your age, race, or disability? [¶] A. Can you rephrase that last question, please. [¶] Q. Did you tell [Myers's superior], 'Hey, I think Buddy Myers is harassing me because of my age, race or disability,' or did you just use the word 'harassed'? [¶] Q. I just used the word 'harass.' " Appellant followed his complaints to Myers's superior with a written complaint in May 2010 to Exxon's human resources department.

Exxon never fired appellant. Instead, appellant resigned and pursued a claim for constructive termination. Under constructive termination, an employee whom an employer virtually forces to resign may sue as if the employer had fired the employee. Constructive termination presupposes an employer imposed an adverse employment action against the employee. (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453.) An adverse employment action materially changes the terms and conditions of employment. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1036.) The newly imposed terms and conditions must be so onerous and oppressive that no reasonable employee could be expected to withstand them. (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305-1306.)

Appellant's claim of constructive termination fails because he does not have evidence of onerous and oppressive working conditions. Exxon permitted appellant to take medical leave, and promised upon his return to work a different supervisor from Myers. Appellant offers no evidence that Exxon reduced his pay because he complained

8

about Myers or took medical leave, and although he offers evidence that Exxon changed his job title from senior staff engineer to project engineer, he offers no evidence that it was more than a change in Exxon's internal nomenclature without affecting appellant's responsibilities or duties. His placement in a PIP in November 2009, and the attendant risk of termination if he did not improve under his PIP, preceded his complaints about Myers and therefore cannot be causally linked to those complaints – and, in any event, his continued poor performance in his PIP did not result in discharge. (See *Reynolds v. Department of the Army* (3d. Cir. July 22, 2011, No. 10-3600) 2011 U.S. App. Lexis 15146 [placement in PIP is not adverse change in terms or conditions of employment sufficient to support constructive termination].) Whatever Myers's inappropriateness toward appellant, FEHA is not a guidebook for good manners. FEHA "does 'not guarantee employees "a stress-free working environment" ' " because the Legislature "did not enact a 'general civility code' when it passed the FEHA into law." (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344; *Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 1007-1008.) Accordingly, no triable issue exists regarding appellant's cause of action for wrongful termination in violation of public policy.[6]

---

[6] The Achilles heel of appellant's lawsuit against Exxon is the absence of evidence that Exxon imposed an adverse employment action against him. Appellant's discrimination claims against Exxon alleged disparate treatment based on appellant's national origin/race, age, and disability, but disparate treatment involves an adverse employment action, which is missing here. (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 355 ["the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."]; CACI No. 2500 [same].) Exxon did not fire appellant, reduce his pay, or demote him; instead, it let him take medical leave and moved Myers to another department. As for the negative performance reviews which eventually led to appellant's placement in PIP, those events preceded Myers's becoming appellant's supervisor.

9

4.      *No Triable Issue of Race or National Origin and Age Discrimination*

Appellant contends triable issues of race, national origin and age discrimination existed. As evidence of bias, he asserts Myers treated him "more harshly" and "scrutinized" him "more carefully" than white engineers because appellant was of Filipino descent. Of the six engineers Myers supervised, the four higher rated engineers were white, while the two lower rated engineers were appellant and an African-American. Myers frequently yelled at appellant, but helped white engineers with their projects. Myers complained once about appellant's Filipino accent and another time asked whether English was appellant's second language. According to appellant, Myers overloaded appellant with more projects than white engineers in order to set appellant up for failure. Appellant complained to Exxon's human resources department in May 2010 that he had "9 active projects, 6 in execution phase and 3 in development phase. Most other project leaders are involved in two or three active projects at a time." Also, appellant notes that Myers "rudely" asked appellant's age when Myers admonished him for poor job performance, and replaced appellant with a younger manager on a project.

Appellant contends the court erred by failing to draw inferences in his favor from the record. Instead, according to appellant, the trial court relied on the "stray remark" doctrine to dismiss his evidence of Myers's bias. As his launching point for his argument that the court did not construe evidence favorably toward him, appellant cites Myers's comment in March 2010 that appellant was "too senior." According to appellant, the trial court wrongly dismissed this comment by saying, "It's unlikely that Myers would have to ask the Plaintiff what his age was. He could look at the personnel records." According to appellant, the court's dismissal of Myers's remark reflected the court's misapplication of the stray remark doctrine, a doctrine disfavored under California law. Appellant correctly notes that whether a remark is "stray" – and thus too inconsequential to be evidence of unlawful bias – is ordinarily for the jury to weigh. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 539-540.) Only if the remark is so wholly unconnected to an adverse employment action that it is indisputably irrelevant can a remark be dismissed as

10

"stray." (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 320 [" 'stray' discriminatory remark that a court determines is unconnected to the adverse employment action is insufficient evidence of a discriminatory motive, as a matter of law, and may be wholly disregarded by the court."].) When a stray remark is the only evidence of animus, it is insufficient to create a triable issue. The "stray remarks cases merely demonstrate the 'common-sense proposition' that a slur, in and of itself, does not prove actionable discrimination. [Citations.] A stray remark alone may not create a triable issue of age discrimination. But when combined with other evidence of pretext, an otherwise stray remark may create an 'ensemble [that] *is* sufficient to defeat summary judgment.' [Citation.]" (*Reid,* at pp. 541-542.)

The trial court did not rely on the stray remark doctrine to reject appellant's evidence of national origin, race, or age animus. Instead, the court put Myers's comments into context. The court noted that Myers's "too senior" remark occurred when discussing opportunities appellant had in his PIP to learn from less experienced (i.e., junior) engineers who might mentor him. Because appellant was among the most experienced (i.e., senior) engineers, such mentoring seemed unlikely. Correctly understanding Myers to have meant senior as "experienced" rather than "elderly," the court observed that Myers did not need to ask appellant his age when he could look at his personnel file.

As additional support of his contention that the court misapplied the stray remark doctrine, appellant takes the court's comments out of context. Appellant quotes the court as saying, "But I do think that an isolated comment is not a basis to carry it to trial, unless the comment is pretty blatant. . . [¶] Look, counsel, I don't want to call a jury down here, take them out of their employment, unless there's some real evidence of a violation. . . . You disagree with me. You say that an isolated comment is enough to send to the jury. I don't think so. I don't think the standards specify that at all." The court offered its remarks when discussing Exxon's requirement that appellant supply a fitness-for-duty certificate. In the absence of appellant's presentation of such a note, which was essential to his being able to return to work, the court correctly concluded appellant did not have

11

an actionable claim arising from his not returning to Exxon's employment.  Quoted more fully (with the portions omitted by appellant italicized), the court said:  "Look, counsel, I don't want to call a jury down here, take them out of their employment, unless there's some real evidence of a violation.  *And if there's evidence of a particular violation, we can go to trial on that.  But I don't want a broad-based complaint if there's no evidence supporting every cause of action in the complaint.  And that's why I said, 'I don't see a national origin discrimination claim here.'*  [¶]  You disagree with me.  You say that an isolated comment is enough to send to the jury.  I don't think so.  I don't think the standards specify that at all.  [¶]  . . . *Exxon is essentially saying is, he was terminated for failure to comply with return-to-work requirements.  You have to provide substantial evidence that that's a pretext*."

But even if the court applied the stray remarks doctrine, the court's reliance does not bind us because we independently review the record.  (*Quinn v. U.S. Bank NA* (2011) 196 Cal.App.4th 168, 175 [" ' "The trial judge's stated reason for granting summary judgment is not binding on us because we review its ruling, not its rationale." ' "]; *Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 781 ["on appeal from a summary judgment, we look only to the validity of the judgment, not the reasons it was granted in the first instance."].)  Whatever the evidence of Myers's unpleasantness toward appellant, Myers was not responsible for appellant's low rankings that led to placement in a PIP and put his job in jeopardy.  Additionally, Exxon did not take any adverse employment action against appellant.  And finally, Exxon did not fire appellant, he quit, and he did so following his unexplained failure to present a fitness-for-duty certificate even after Exxon had moved Myers to a different department.  Appellant thus failed to show a triable issue of national origin, race, or age discrimination.

**DISPOSITION**

The judgment is affirmed.  Each side to bear its own costs on appeal.


                              RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.

13